Jackie LAURIE, Barbara Lindsey, Plaintiffs-Appellants,

v.

ALABAMA COURT OF CRIMINAL APPEALS, Sam Taylor, in his official and individual capacity, Defendants-Appellees.

Nos. 00-11333, 00-11639.

United States Court of Appeals,

Eleventh Circuit.

July 12, 2001.

Appeal from the United States District Court for the Middle District of Alabama. (No. 98-00506-CV-D-N), Ira De Ment, Judge.

Before CARNES and MARCUS, Circuit Judges, and PROPST[*], District Judge.

PER CURIAM:

Plaintiffs Jackie Laurie and Barbara Lindsey filed this lawsuit on April 30, 1998 against the Alabama Court of Criminal Appeals ("ACCA") and Sam Taylor, a former judge on the ACCA. The plaintiffs alleged that, while employed by the ACCA, they suffered sexual harassment and were exposed to a hostile work environment in violation of Title VII, 42 U.S.C. § 2000e, *et seq.*[1]

The defendants in this action moved for summary judgment on various grounds, including that the district court lacked subject matter jurisdiction over the action because, the defendants contended, the ACCA did not qualify as an "employer" for purposes of Title VII in that it did not employ fifteen "employees," as defined by Title VII, during the relevant time period. *See* 42 U.S.C. §§ 2000e(b) & (f). The plaintiffs argued in response that the ACCA should be considered together with other Alabama courts and state agencies for purpose of counting the number of employees and that, in any event, the ACCA employed more than enough employees to qualify as an "employer." On February 14, 2000, the district court entered an order granting summary judgment in favor of Taylor for reasons not at issue in this appeal, but denied the ACCA's motion for summary judgment. The court agreed with the ACCA that it was a separate and distinct for purposes of Title VII, but found that it had presented insufficient evidence supporting its claim that it employed fewer

---

[*]Honorable Robert B. Propst, U.S. District Judge for the Northern District of Alabama, sitting by designation.

[1]The plaintiffs also asserted several state law claims and claims under the Age Discrimination in Employment Act, 29 U.S.C. § 623. Each of those claims was dismissed, and the plaintiffs do not appeal those dismissals.

than fifteen employees. Following a renewed summary judgment motion and an evidentiary hearing, however, the district court dismissed the Title VII claims against the ACCA and Taylor based on lack of subject matter jurisdiction. *See Laurie v. Alabama Court of Criminal Appeals,* 88 F.Supp.2d 1334 (M.D.Ala.2000). In its opinion, the district court found that the staff attorneys and junior staff attorneys employed by the ACCA qualified as both "personal staff" and "immediate advisers" rather than "employees" for purposes of Title VII, *see* 42 U.S.C. § 2000e(f), and that, as a result, the ACCA had fewer than fifteen "employees" during the relevant time period.

Also involved in this appeal is the district court's denial of the plaintiffs' motion for leave to amend their complaint. On September 29, 1999, approximately eleven months after the deadline in the district court's scheduling order for amendments, the plaintiffs sought to amend their complaint in order to assert a Fourteenth Amendment claim against the defendants under 42 U.S.C. § 1983 and in order to add as a defendant the Clerk of the ACCA. The district court denied that motion on the basis of undue delay, unfair prejudice to the defendants, and futility.

The plaintiffs press four issues on appeal. The first three issues relate to the district court's determination that it lacked subject matter jurisdiction over the Title VII claims against the ACCA. First, the plaintiffs argue that the district court erred by determining that the ACCA was a separate and distinct entity from other Alabama state courts or agencies for purposes of determining whether it qualified as an "employer" under Title VII. We believe that the district court correctly determined, under our opinion in *Lyes v. City of Riviera Beach,* 166 F.3d 1332 (11th Cir.1999), that the ACCA is a separate and distinct entity under Alabama law, and that its employees should not be aggregated with the employees of other state courts or agencies for Title VII purposes. Therefore, we affirm that portion of the district court's decision on the basis of the well-reasoned discussion in sections IV.A.3.a & b of that court's February 14, 2000 opinion, that part of which is attached hereto as Appendix A.

Second, the plaintiffs argue that the methodology employed by the district court in counting the number of Title VII "employees" was inconsistent with the Supreme Court's decision in *Walters v. Metropolitan Educational Enterprises, Inc.,* 519 U.S. 202, 117 S.Ct. 660, 136 L.Ed.2d 644 (1997), which held that the "payroll method" should be used for determining whether an individual qualifies as an "employee." We disagree. The question addressed in *Walters* was "whether an employer 'has' an employee [for purposes of Title VII] on any working day on which the employer maintains an employment relationship

with the employee, or only on working days on which the employee is actually receiving compensation from the employer." 519 U.S. at 204, 117 S.Ct. at 662. Therefore, the issue addressed in *Walters* is fundamentally different from the issue involved in this appeal. The *Walters* decision does not stand for the proposition that all individuals paid by an entity, including elected officials, "personal staff," "immediate advisers" and others expressly excluded from Title VII's definition of "employee," must nonetheless be counted for purposes of determining the number of "employees" of an entity, simply because those individuals appear on the entity's payroll. Such an approach would be contrary to the plain meaning of the statute. *See* 42 U.S.C. §§ 2000e(b) & (f). Therefore, we conclude that the district court's decision is not contrary to *Walters*.

Third, the plaintiffs argue that the district court erred by finding that the staff attorneys and junior staff attorneys employed by the ACCA were "personal staff" and "immediate advisers," rather than "employees" for purposes of Title VII. We disagree, and affirm on the basis of the district court's well-reasoned opinion, published at 88 F.Supp.2d 1334. There was no error in the district court's dismissal of the plaintiffs' Title VII claims for lack of subject matter jurisdiction.

Finally, the plaintiffs argue that the district court abused its discretion by denying the plaintiffs' motion for leave to amend the complaint. We disagree, and conclude that the court did not abuse its discretion by denying the motion based on the reasons explained in its March 14, 2000 opinion, attached hereto as Appendix B.

AFFIRMED.

## APPENDIX A

JACKIE LAURIE, et al., Plaintiffs,

v.

ALABAMA COURT OF CRIMINAL APPEALS, et al., Defendants.

Civil Action No. 98-D-506-N.

IN THE DISTRICT COURT OF THE UNITED STATES FOR THE MIDDLE DISTRICT OF ALABAMA NORTHERN DIVISION.

Feb. 14, 2000.

## MEMORANDUM OPINION AND ORDER

Before the court is Defendant Alabama Court of Criminal Appeals' ("ACCA") Motion For Summary Judgment ("ACCA Mot.") and Brief In Support Of Motion For Summary Judgment ("ACCA Br."), filed June 3, 1999. Also before the court is Defendant Sam Taylor's ("Judge Taylor") Motion For Summary Judgment

("Taylor Mot.") and Memorandum Brief In Support Of Motion For Summary Judgment ("Taylor Br."), also filed June 3, 1999. On September 29, 1999, Plaintiffs filed

APPENDIX A—cont.

a Responsive Brief In Opposition To Defendants' Motions For Summary Judgment ("Resp."). Judge Taylor filed a Reply Brief ("Taylor Reply") on October 29, 1999. The ACCA filed its Reply To Plaintiffs' Response ("ACCA Reply") on November 1, 1999. After careful consideration of the arguments of counsel, the relevant law, and the record as a whole, the court finds that the ACCA's Motion For Summary Judgment is due to be denied and that Judge Taylor's Motion For Summary Judgment is due to be granted.

. . .

*3. The "Single Employer" Test And Title VII's Requirement That An Employer Have Fifteen Employees*

In arguing that the ACCA is not an "employer" within the meaning of Title VII, the ACCA asserts that it does not employ fifteen individuals who meet the statutory definition of "employee" under 42 U.S.C. § 2000e(f). (ACCA Br. at 22.) However, Plaintiffs contend that, for purposes of counting employees, the "single employer" test requires the court to aggregate the ACCA with all other courts within the State of Alabama's Unified Judicial System. Alternatively, Plaintiffs assert that, contrary to the ACCA's argument, the ACCA does employ fifteen qualifying "employees." (Resp. at 34.) While the court disagrees with Plaintiffs that aggregation is appropriate, the court finds that disputed issues of fact exist concerning whether the ACCA employs fifteen qualifying "employees."

*a. General Principles*

Under Title VII, an "employer" is "a person[2] engaged in an industry affecting commerce who has *fifteen or more employees* for

APPENDIX A—cont.

each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person ...." 42 U.S.C. § 2000e(b) (emphasis added). "Employee" is defined as

> an individual employed by an employer, except that the term "employee" shall not include any person elected to public office in any State or political subdivision of any State by the qualified voters thereof, or any person chosen by such officer to be on such officer's personal staff, or an appointee on the policy making level or an immediate adviser with respect to the exercise of the constitutional or legal powers of the office. The exemption set forth in the preceding sentence shall not include

---

[2]"Person" is defined as "one or more individuals, governments, governmental agencies, political subdivisions, labor unions, partnerships, associations, corporations, legal representatives, mutual companies, joint-stock companies, trusts, unincorporated organizations, trustees, trustees in cases under Title 11, or receivers." 42 U.S.C. § 2000e(a).

employees subject to the civil service laws of a State government, governmental agency or political sub-division.

42 U.S.C. § 2000e(f).

In the Eleventh Circuit, the issue of whether an employer has fifteen Title VII "employees" is a "jurisdictional" question: "[A] plaintiff must show that her 'employer' had fifteen or more employees for the requisite period provided under the statute before her Title VII claims can be reached." *Lyes v. City of Riviera Beach, Fla.,* 166 F.3d 1332, 1340-41 (11th Cir.1999); *see also Owens v. Southern Development Council, Inc.,* 59 F.Supp.2d 1210, 1213 (M.D.Ala.1999) (Thompson, J.). Thus, if Plaintiffs cannot demonstrate that the ACCA has at least fifteen "employees," the court lacks subject matter jurisdiction over their Title VII claims.

### b. Aggregation

The court first must decide whether the ACCA and the other courts within the Uni`

APPENDIX A—cont.

fied Judicial System should be aggregated and considered as a single "employer" for purposes of counting employees and determining Title VII liability. In arguing that the ACCA is "a separate and distinct entity," the ACCA contends that the court must apply the test enunciated in *Lyes, supra.* (ACCA Br. at 22.) The court agrees.

In *Lyes,* the Eleventh Circuit established the test for determining whether "two or more state or local governmental entities" should be aggregated and treated as a "single Title VII 'employer' " for the purpose of counting employees. 166 F.3d at 1344. First, courts must "begin with the presumption that governmental subdivisions denominated as separate and distinct under state law should not be aggregated for purposes of Title VII." *Id.* at 1345. The presumption exists because "comity" and "federalism" require that federal courts "accord substantial deference to a state lawmaking body's determination of whether two or more governmental entities are separate and distinct." *Id.* at 1344.

However, a plaintiff may rebut the presumption in one of two ways. First, if the evidence demonstrates "that a state's purpose in creating or maintaining nominally separate entities was to evade the reach of the federal employment discrimination laws, that alone is enough for those entities to be aggregated when counting employees." *Id.* Second, even

APPENDIX A—cont.

[a]bsent an evasive purpose, the presumption against aggregating separate public entities will control the inquiry, unless it is clearly outweighed by factors manifestly indicating that the public entities are so closely interrelated with respect to control of the fundamental aspects of the employment relationship that they should be counted together under Title VII.

*Id.* at 1345. The Eleventh Circuit stated that "[s]everal factors" should "guide" the court's "determination of whether the presumption in favor of the distinctness of the public entities is clearly outweighed":

As we have already noted, the NLRB factors of "interrelation of operations" and "centralized control of labor operations" may continue to be helpful in the inquiry. Useful "indicia of control" may be drawn from the agency context, including: " 'the authority to hire, transfer, promote, discipline or discharge; the authority to establish work schedules or direct work assignments; [and] the obligation to pay or the duty to train the charging party.' " Our list of factors is not intended to be all inclusive, and consideration must be given to the totality of the circumstances.

*Id.* at 1345 (internal citations omitted).[3]

The *Lyes* court further explained a plaintiff's burden on summary judgment in overcoming the presumption:

APPENDIX A—cont.

The standard we adopt is not whether a fact finder reasonably could conclude the plaintiff has overcome the presumption. Instead, the standard is whether the fact finder reasonably could conclude the plaintiff has clearly overcome the presumption. The adverb "clearly," which derives from the federalism concerns we have discussed, is meant to be limiting. It is a thumb on the scale, and sometimes it will be decisive because federalism concerns should sometimes be decisive. Absent evidence of evasive purpose, in order to survive a motion for summary judgment, a plaintiff will have to show that a reasonable fact finder could conclude that the presumption of distinctness is clearly outweighed.

---

[3]In *Lyes,* the Eleventh Circuit had to decide whether, in cases involving state and local entities, courts should apply the four-part test used for determining if two private entities "should be ... counted as a single employer." 166 F.3d at 1341-1342. This four-part test, formulated by the National Labor Relations Board ("NLRB"), provides that courts should examine the " '(1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control.' " *Id.* at 1341 (quoting *McKenzie v. Davenport-Harris Funeral Home,* 834 F.2d 930, 933 (11th Cir.1987)).

The Eleventh Circuit "joined those courts that have concluded that 'the [four-part NLRB] standard is not readily applicable to governmental subdivisions[.]' " *Lyes,* 166 F.3d at 1342. The Eleventh Circuit based its conclusion on three grounds. First, the Eleventh Circuit stated that the fourth factor, i.e., "common ownership or financial control," "has no application to the usual case involving governmental subdivisions." *Id.* at 1343. That is, "[g]overnmental subdivisions such as counties or towns ... may share sources of ultimate political control or funding, yet be wholly distinct with respect to their day-to-day operations or their control over the relationships with employees." *Id.* Second, the Eleventh Circuit concluded that the third factor, i.e., "common management," is not "readily applicable in the case of governmental entities," because "two public entities may share managers or other employees while remaining politically separate and distinct." *Id.* Third, the Eleventh Circuit stated that "there is another, perhaps more fundamental reason for not applying the NLRB test. That reason involves federalism and comity concerns, which should play a significant role in determining whether to treat as one body two governmental entities that are separate and distinct under state law." *Id.*

*Id.* at 1345-1346.

### i. The Presumption

Plaintiffs argue that Alabama's creation of a Unified Judicial System in 1973 proves that the ACCA is not separate or distinct from the other Alabama courts. (Resp. at 34.) However, the ACCA asserts that the purpose of the Unified Judicial System is to promote the uniformity of practice in the state's trial courts and to streamline case management, not to destroy the separateness of the individual courts. (ACCA Reply at 1-2.) The court agrees with the ACCA for the following reasons.

As noted by the ACCA, prior to the constitutional amendment creating a Unified Judicial System, "[t]here were 85 limited juris`

### APPENDIX A—cont.

diction trial courts in Alabama, apart from municipal and probate courts, under 23 names, each with varying jurisdiction and procedure. Hence, a lawyer could not know, from county to county, the proper or most convenient forum in which to present a claim for relief." Charles D. Cole, "Judicial Reform in Alabama: A Reflection," 60 Alabama Lawyer 185, 187 (May 1999); (ACCA Reply at 2.)

Even though the ACCA operates as part of the Unified Judicial System, Alabama law creates a presumption that the ACCA is "separate and distinct" from the other state courts. *Lyes,* 166 F.3d at 1346. By statute, the ACCA was established as a five-judge court with jurisdiction both different and separate from the other courts. *See* ALA. CODE §§ 12-3-1, 12-3-9 (1995). In creating the ACCA, Alabama statutes also organized the ACCA's structure separate from other courts. For example, the employment positions for the ACCA are created solely for the ACCA, and the ACCA has autonomous authority in the selection of those positions. ALA. CODE §§ 12-3-20, 12-3-22, 12-3-27, 12-3-34, 12-3-35, 12-3-36 (1995). As in *Lyes,* the court finds that "[t]he clear distinction" Alabama law "draws between" the ACCA and the other Alabama courts "raises the presumption" that the ACCA is a "separate and distinct" entity. 166 F.3d at 1346.

### ii. Rebutting The Presumption

The court finds that Plaintiffs have failed to rebut the presumption under either of the two methods articulated in *Lyes.* 166 F.3d at

### APPENDIX A—cont.

1344-45. First, no evidence has been offered that the structure of the courts and the delegation of authority to each court was created "to evade the reach of the federal employment discrimination laws." *Id.* at 1344. Plaintiffs have not argued that such evidence exists, and the court is aware of no such evidence or legislative purpose. *See id.* (noting that "it is unlikely that a state would structure its state and local entities"

with a "purpose" of "evad[ing] federal law").

Second, the court finds that Plaintiffs have not established an "interrelatedness with regard to control over employment sufficient to permit a reasonable fact finder to conclude that the presumption that the governmental entities are distinct is clearly outweighed." *Id.* at 1346. The statutes creating and defining the ACCA give the five judges of the ACCA complete control over the hiring, discipline and firing of its employees. (ACCA Mot., Ex. 16 WW 4-5.) The court need not seek approval from any other court in its employment decisions. Moreover, the employees "serve at the pleasure of the court," not any other court or entity. (ACCA Reply, Ex. F at 1.)

Not only does the ACCA make autonomous decisions involving all aspects concerning its employees, but the ACCA also maintains "the personnel records on their employees, including leave requests, balances and time cards." (ACCA Mot., Ex.

APPENDIX A—cont.

16 ¶ 3.) Furthermore, the ACCA independently prepares an annual budget request and operates its own budget. (*Id.* ¶ 4; Pl.s' Resp., Ex. F); *see also Lyes,* 166 F.3d at 1346 n. 10 (noting that the City's Redevelopment Agency ("CRA") "maintain[ed] separate bank accounts and records" from the City, "prepare[d] its own budget" and kept "its own offices"). Based on these facts, the court finds that the ACCA "retained and exercised control over the fundamental aspects of its employee relations" and that Plaintiffs have failed to rebut the presumption that the ACCA is a "separate and distinct" entity. *Id.* at 1345-1346 (holding that a presumption existed that the CRA was a "separate and distinct" entity from the City and that the plaintiff had failed to rebut the presumption[4]); *see also Lewis v. McDade,* 54 F.Supp.2d 1332, 1342 (N.D.Ga.1999) (In applying the *Lyes* test, the district court found that the Douglas County, Georgia, District Attorney's Office was a separate entity from the State of Georgia: The District Attorney's Office "was essentially autonomous. [The District Attorney] had total control over hiring, transfers, promotions, discipline, and discharges."). In sum, the court finds that, based on the "totality of the circumstances," a reasonable jury could not conclude that Plaintiffs have "clearly overcome" the presumption that the ACCA is a "separate and distinct" entity. *Lyes,* 166 F.3d at 1347.

APPENDIX B

JACKIE LAURIE, et al., Plaintiffs,

---

[4]In holding that the plaintiff failed to rebut the presumption, the Eleventh Circuit concluded that there was no evidence of an "interrelatedness with regard to control over employment":

> The CRA Board of Commissioners and its Executive Director control the fundamental aspects of employment of the CRA's staff. The Executive Director hires and supervises the staff, and the Board may hire, fire, and establish work schedules and assignments. The Executive Director is employed by the CRA, and he serves at the pleasure of the CRA Board, not at the pleasure of the City. Employees of the CRA receive their medical benefits, life insurance and pension plans from the CRA, not from the City. [The plaintiff] was disciplined, suspended and eventually terminated by the Executive Director of the CRA, and that decision was upheld by the CRA Board, not by the City. All of these circumstances establish that the CRA retained and exercised control over the fundamental aspects of its employee relations.

*Id.* at 1346.

v.

ALABAMA COURT OF CRIMINAL APPEALS, Defendant.

Civil Action No. 98-D-506-N.

IN THE DISTRICT OF THE UNITED STATES FOR THE MIDDLE DISTRICT OF ALABAMA NORTHERN DIVISION.

March 14, 2000.

ORDER

On January 26, 2000, the court denied Plaintiffs' Motion For Leave Of Court To Amend Complaint ("Mot. To Amend"). (Doc. Nos.88, 119.) Herein, the court explains the reasons for the denial.

Plaintiffs commenced this lawsuit on April 30, 1998, by filing a five-count Complaint against the Alabama Court of Criminal Appeals ("ACCA") and Judge Sam Taylor ("Judge Taylor"). In Count 1, Plaintiffs alleged that, based upon their sex, they were subjected to harassment which resulted in a hostile work environment, in violation of Title VII. Count 1 was lodged against both the ACCA and Judge Taylor. (Compl.WW 10-23.) In Count 2, Plaintiffs brought a claim against the ACCA and Judge Taylor under the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 623(a)(1). (*Id.* WW 24-35.) Counts 3-5 alleged state law claims against only Judge Taylor for invasion of privacy, battery and outrage. (*Id.* WW 36-47.)

On September 29, 1999, almost a year after the Rule 16 Order deadline for filing amended pleadings had expired and approximately 11/2 years after the filing of their Complaint, Plaintiffs filed their Motion To Amend.

APPENDIX B—cont.

(Doc. Nos.20, 88.) In their Motion, Plaintiffs sought to amend their Complaint to add an additional count and another Defendant. Specifically, Plaintiffs asked to add a Fourteenth Amendment equal protection claim, as enforced by 42 U.S.C. § 1983, against the ACCA, Judge Taylor and Lane Mann ("Mann"), the Clerk of the Court for the ACCA. The proposed additional count (i.e., Count 5) reads as follows:

56. That the Defendants violated the Constitutional rights of the Plaintiffs as afforded by the Fourteenth Amendment of the United States Constitution to have equal protection under the laws. The actions of the Defendants were done under the color of state law.

57. That the actions of the Defendants were willful, wanton, malicious and/or in total reckless disregard for the Plaintiffs' constitutional rights and protections.

58. The actions or inaction of the Defendants were in violation of protections afforded the Plaintiffs as citizens of the United States of America and give rise to this action pursuant to 42 U.S.C. [§ ] 1983.

(Proposed Am. Compl. at 11.)

In their Motion To Amend, Plaintiffs inferred that the basis of their proposed Count 5 focused on the alleged "forced retirement of one of the Plaintiffs and the termination of the other Plaintiff." (Mot.¶ 5.) Furthermore, as grounds for adding Mann as a Defendant, Plaintiffs asserted that, although Plaintiff Jackie Laurie ("Laurie") told Mann "that she felt uncomfortable around [Judge] Taylor," Mann "took no action regarding her report." (*Id.* ¶ 6.) Additionally, Plaintiffs stated that Mann failed to post the Equal Employment Opportunity ("EEO") plan at the ACCA judicial building and, thus, "willfully secreted" said plan from Plaintiffs. (*Id.* WW 6, 14.) Plaintiffs contended that they only learned of

APPENDIX B—cont.

all the above facts after Mann and the "current" ACCA judges were deposed in September 1999. (*Id.* ¶ 5.)

Once the time period for amending a pleading as of right has expired, Rule 15(a) of the *Federal Rules of Civil Procedure,* provides amendment "only by leave of court or by written consent of the adverse party." The decision whether to grant leave to amend a complaint is within the sole discretion of the district court. Rule 15(a), however, limits the court's discretion by mandating that "leave shall be freely given when justice so requires." *See Halliburton & Assoc. v. Henderson, Few & Co.,* 774 F.2d 441 (11th Cir.1985). There must be a substantial reason to deny a motion to amend. *Id.* Substantial reasons justifying a denial include "undue delay, bad faith, dilatory motive on the part of the movant, ... undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962).

The court finds that undue delay by Plaintiffs in filing their Motion To Amend, the resulting prejudice to Defendants, and the futility of the amendment justified the court's denial of Plaintiffs' Motion To Amend. First, the court finds that Plaintiffs had more than ample opportunity to amend their Complaint to add a § 1983 claim against the ACCA, Judge Taylor and Mann. Based on the evidence in the record, the court finds that Plaintiff Barbara Lindsey ("Lindsey") was aware of the facts giving rise to her proposed § 1983 count. Namely, in her charge of discrimination, filed with the Equal Employment Opportunity Commission ("EEOC") in February 1997, Lindsey states as follows: "After my forced resignation[,] Judge Taylor was heard bragging in the library and around the building that he had successfully 'gotten my job.' " (Lindsey's EEOC Charge

APPENDIX B—cont.

at 5.) Lindsey's four-page, single-spaced, typed EEOC Charge also contains numerous allegations against Mann and his alleged "intimidating" and harsh conduct surrounding her alleged forced resignation. (*Id.*)

Similarly, the court finds that Laurie also possessed knowledge of a potential § 1983 claim when she filed her EEOC charge in February 1997. Namely, in her EEOC charge, Laurie asserted that she "knew Judge Taylor was after [her] job" and that Mann "was working with Judge Taylor to try and take [her] job." (Laurie's EEOC charge at 8.) Furthermore, Laurie stated as follows:

> I believe that I was sexually harassed by Judge Sam Taylor and when I did not become involved with him he became vindictive and spiteful to me. He made my working environment hostile, stressful and uncomfortable. For these reasons my work performance was impeded. I also believe that I was discriminated against because of my age and my illnesses. I felt I had no alternative but to turn in my retirement request. In effect I was forced to retire.

(Lindsey's EEOC charge at 8.)

Despite the foregoing, Plaintiffs chose not to seek leave to amend their Complaint until well over a year after commencing this lawsuit. Additionally, Plaintiffs' Motion To Amend was filed more than eleven months after the court's Order setting the deadline for amending pleadings. (Doc. No. 20); *see Sosa v. Airprint Systems, Inc.,* 133 F.3d 1417, 1418 (11th Cir.1998) ("A district court's decision to enforce its pretrial order will not be disturbed on appeal absent an abuse discretion."). In the court's opinion, Plaintiffs offered no good reason for their delay in bringing the § 1983 claim against the ACCA, Judge Taylor and Mann. In denying Plaintiffs' Motion To Amend, the court could not

APPENDIX B—cont.

find any justification for allowing Plaintiffs to wait until the final stages of this litigation to amend their Complaint.

The court further finds that the ACCA, Judge Taylor and Mann would have suffered prejudice if the court had allowed the amendment, because Defendants would not have been able to adequately address the added count and allegations. The only way the court could have cured the prejudice would have been to further delay the trial of this case, which would have unnecessarily delayed the final disposition of the action and the rights of the Parties.

Moreover, the addition of a § 1983 claim undoubtedly would have brought into play issues involving qualified immunity as to the § 1983 claims against Judge Taylor and Mann in their individual capacities. Not only would further delays ensue, but the court finds that, in the face of a qualified immunity

APPENDIX B—cont.

challenge, Plaintiffs' proposed Count 5 did not satisfy the heightened pleading requirement. *See GJR*

*Investments, Inc. v. County of Escambia, Fla.,* 132 F.3d 1359, 1367, 1368 (11th Cir.1998) ("Heightened pleading is the law of this circuit" when § 1983 claims are asserted against government officials in their individual capacities.); *Oladeinde v. City of Birmingham,* 963 F.2d 1481, 1485 (11th Cir.1992).

Finally, the court notes that the merit of Plaintiffs' claim against Mann based on his failure to post an EEO procedure appears dubious. Plaintiffs have failed to demonstrate how Mann's alleged concealment rises to the level of an equal protection violation or how Plaintiffs could overcome the defense of qualified immunity. Based on the foregoing, the court finds that substantial reasons warranted the denial of Plaintiffs' Motion To Amend.

/s/ Ira De Ment

UNITED STATES DISTRICT JUDGE