**AMNESTY INTERNATIONAL, USA, a New York non-profit corporation, Plaintiff,**

v.

**Louis BATTLE, individually and Thomas Cannon, individually, Defendants.**

No. 06–21619–CIV.

United States District Court, S.D. Florida.

April 24, 2007.

Order Denying Motion May 8, 2007.

Assistant County Attorneys Craig E. Leen and Marlon D. Moffett, for Defendant Louis Battle.

### ORDER ON MOTIONS TO DISMISS SECOND AMENDED COMPLAINT

HUCK, District Judge.

THIS MATTER is before the Court upon Defendant Louis Battle and Defendant Thomas Cannon's Motions to Dismiss Plaintiff, Amnesty International's Second Amended Complaint, filed February 12, 2007 and February 5, 2007, respectively [D.E.# 50 and 47]. The Court has considered the Motions, Plaintiff Amnesty International, U.S.A.'s Responses thereto and Defendants' Replies in further support thereof. The Court is duly advised in the premises.

### BACKGROUND [1]

This case arises from the Free Trade Area of the Americas summit held in downtown Miami in November of 2003. The meeting of trade ministers and business leaders from thirty-four countries drew many protesters, including some organized by Plaintiff Amnesty International

("Amnesty"). The City of Miami Police Department formulated the security plan for the summit. It involved a multi-agency force representing forty different Federal, State, County, and municipal law enforcement agencies. The plan was to present an overwhelming show of force and discourage people from coming downtown to protest.

Amnesty obtained a permit from the City of Miami Police Department to conduct a demonstration for human rights on November 20, 2003, from 10:00 a.m. until 2:00 p.m. The demonstration was to be held at the Torch of Friendship on the east sidewalk of Biscayne Boulevard, between Northeast 3rd and 4th Street.

Defendants Louis Battle and Thomas Cannon supervised police officers in downtown Miami on the day of Amnesty's demonstration. Even though they were aware of Amnesty's permit, Defendants Battle and Cannon "planned and agreed to police action that destroyed Amnesty's demonstration." When Amnesty attempted to start its demonstration in accordance with its permit, approximately ten to twelve people were present at the Torch of Friendship. Most of them were speakers and Amnesty members who set up tables to distribute literature. Amnesty planned to present six to eight speakers, distribute literature, and sign up new members. It also planned for significant media coverage of its demonstration. Based on a similar demonstration Amnesty had conducted in connection with a top level meeting of the FTAA in Miami in 1994, the organization expected to attract more than 100 people. However, the crowds Amnesty expected never materialized.

Amnesty claims that Defendants Battle and Cannon directed police officers to take action that destroyed its planned demon-

1. The facts set forth in this section are those  alleged in the Second Amended Complaint.

stration. Specifically, Amnesty claims that the Defendants ordered the officers to form a cordon, 50 to 75 yards from the Torch of Friendship, and to allow no one to enter. The organization claims that people in the area attempted to attend the demonstration, but the cordon and officers in riot gear prevented them from doing so. Amnesty further claims that people in the area could not see or hear the speakers it presented because the police cordon kept them a substantial distance from the Torch of Friendship. Some Amnesty members attempted to pass through the cordon to invite people to attend the demonstration, distribute literature and/or sign up new members, but the police cordon prevented them from doing so. Finally, Amnesty claims that the police cordon prevented media representatives from hearing and filming its demonstration, obtaining the organization's literature, or speaking with organization members.

Defendants have individually moved to dismiss the Amended Complaint because, according to them, Amnesty has failed to allege a claim upon which relief may be granted. Defendants also argue that Amnesty lacks standing to bring this action.

### STANDARD OF REVIEW

A complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts that support a claim for relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Bracewell v. Nicholson Air Servs., Inc.,* 680 F.2d 103, 104 (11th Cir.1982). When ruling on a motion to dismiss, a court must view the complaint in the light most favorable to the plaintiff, and accept the plaintiff's well-pleaded facts as true. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Gonzalez v. McNary,* 980 F.2d 1418, 1419 (11th Cir. 1993). The Eleventh Circuit has tightened the pleading requirements in civil rights

cases under § 1983, especially those involving the defense of qualified immunity. *GJR Investments, Inc. v. County of Escambia,* 132 F.3d 1359, 1367 (11th Cir. 1998). The complaint must allege the relevant facts "with some specificity." *Id.* "[M]ore than mere conclusory notice pleading is required.... [A] complaint will be dismissed as insufficient where the allegations it contains are vague and conclusory." *Fullman v. Graddick,* 739 F.2d 553, 556–57 (11th Cir.1984). *See also Veney v. Hogan,* 70 F.3d 917, 922 (6th Cir.1995) (holding that complaint must "include the specific, non-conclusory allegations of fact that will enable the district court to determine that those facts, if proved, will overcome the defense of qualified immunity"). Moreover, in reviewing a motion to dismiss, the Court need only accept "well-pleaded facts" and "reasonable inferences drawn from those facts." *Oladeinde v. City of Birmingham,* 963 F.2d 1481, 1485 (11th Cir.1992). "[U]nsupported conclusions of law or of mixed fact and law have long been recognized not to prevent a Rule 12(b)(6) dismissal." *Marsh v. Butler County,* 268 F.3d 1014, 1036 n. 16 (11th Cir.2001). With the foregoing standard in mind, the Court considers the Defendants' motions to dismiss the Second Amended Complaint.

### ANALYSIS

Defendants argue that Amnesty fails in its Second Amended Complaint to allege sufficient facts to establish a violation of the organization's constitutional rights and overcome their qualified immunity from suit. The Court agrees. Under the doctrine of qualified immunity, government officials performing discretionary functions are immune not just from liability, but from suit, unless the conduct which is the basis for suit violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S.

800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982) A "necessary concomitant" to the question of whether a plaintiff has alleged a violation of a clearly established federal right is "the determination of whether the plaintiff has asserted a violation of a constitutional right at all." *Siegert v. Gilley,* 500 U.S. 226, 232, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991). If a plaintiff has not sufficiently alleged a violation of any constitutional right, the plaintiff likewise has failed to allege the violation of a "clearly established" right. *GJR Investments,* 132 F.3d at 1367.

As noted above, plaintiffs in § 1983 actions against officials entitled to qualified immunity are held to a heightened pleading requirement in this Circuit. *Id.* Such plaintiffs must allege the relevant facts "with some specificity." *Id.* In *GJR Investments,* for example, the Eleventh Circuit held that a plaintiff that had been denied a permit to develop a parcel of land had failed to adequately allege an equal protection violation where the plaintiff the "[did] not present a single instance in which a similarly situated developer was granted a permit" and "merely allege[d] that nameless, faceless 'other' permit applicants were given better treatment." *Id.* The court noted that such "[b]are allegations that 'other' applicants, even 'all other' applicants, were treated differently [did] not state an equal protection claim." *Id.* at 1368. Although it deals with different constitutional rights, Amnesty's Second Amended Complaint here suffers the same defect.

Attempting to establish that Defendants violated its First Amendment rights to speak and assemble, Amnesty merely alleges that "people in the area attempted to attend the rally/demonstration" but were prevented from doing so by the cordon of police officers in riot gear. This is the same kind of bare allegation rejected as insufficient in *GJR Investments.* Much like the plaintiff in *GJR Investments* failed to identify a single similarly situated developer that was treated differently than the plaintiff, Amnesty here fails to identify a single person who actually desired to join its demonstration but could not do so because of the police cordon. Instead, Amnesty refers to an unspecified number of nameless and faceless would-be demonstrators in the area. The allegation is not helped by Amnesty's conjecture that its demonstration should have drawn at least one hundred participants because it drew that many participants to a similar demonstration it organized in connection with the 1994 FTAA meetings in Miami.

Amnesty's claim that the police cordon prevented it from sharing its message with the media is similarly vague and conclusory. Instead of identifying a single member of the media that was prevented from covering its demonstration, Amnesty merely alleges that "media representatives" could not hear or film the demonstration. Amnesty's allegations that the police cordon prevented it from signing up new members and distributing literature suffer the same defect. To subject Defendants to suit on the basis of Amnesty's vague allegations and conclusions would render meaningless Defendants' qualified immunity from suit. *See Gonzalez v. Reno,* 325 F.3d 1228, 1235 (11th Cir.2003) (" '[M]ore than a mere conclusory notice pleading is required .... [A] complaint will be dismissed as insufficient where the allegations it contains are vague and conclusory' ").

■ Having determined that Amnesty has failed to adequately allege a violation of its First Amended rights, the Court need not consider whether the allegedly violated rights were "clearly established." *See Saucier v. Katz,* 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). However, even assuming for the sake of argument that Amnesty *had* adequately alleged

a First Amendment violation, Defendants are nonetheless entitled to qualified immunity because Amnesty has failed to establish that its purported rights were clearly established.

■ For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. *Hope v. Pelzer*, 536 U.S. 730, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002). This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, *see Mitchell v. Forsyth*, 472 U.S. 511, 535, n. 12, 105 S.Ct. 2806, 86 L.Ed.2d 411; but it is to say that in the light of pre-existing law the unlawfulness must be apparent. *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).

Amnesty alleges no facts in its Second Amended Complaint and offers no authority in its Response to the Motions to Dismiss establishing that any reasonable person in Defendants' position would have understood that his or her conduct violated federal law. Instead, as it did in its attempt to allege a First Amendment violation, Amnesty simply relies on conclusory allegations that Defendants "knew of Amnesty's First and Fourteenth Amendment rights, knew that these rights were clearly established, knew of Amnesty's permit, and knew that their actions would destroy these rights." Such bare allegations do not satisfy the Eleventh Circuit's heightened pleading requirement in § 1983 cases involving the defense of qualified immunity. Neither the allegations in the Second Amended Complaint nor Amnesty's arguments in opposition to the Motions to Dismiss provide any indication of *why* Defendants should have known that the simple act of forming of a cordon of police officers under the circumstances here was a violation of Plaintiff's constitutional rights.

■ Although Amnesty suggests, relying on *Mercado v. City of Orlando*, 407 F.3d 1152 (11th Cir.2005) and *Lee v. Ferraro*, 284 F.3d 1188, 1199 (11th Cir.2002), that "the rights involved here, free speech, assembly, association, and petition, in a public forum are of [such] ancient and venerable lineage" that the existence of prior law on point is unnecessary, the Court disagrees. While a party's First Amendment rights are clearly established in a general sense, "the right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense." *Saucier*, 533 U.S. at 202, 121 S.Ct. 2151 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right *under the circumstances* of the given case. *Id.*

The facts alleged here are quite different from those of the cases upon which Amnesty relies to establish that the rights allegedly violated were clearly established. In *Edwards v. South Carolina*, 372 U.S. 229, 83 S.Ct. 680, 9 L.Ed.2d 697 (1963), for example, police officers arrested demonstrators who did not disperse as ordered. The Supreme Court overturned the demonstrators' convictions for breach of the peace because the demonstrators were exercising "their basic constitutional rights in their most pristine and classic form." *Id.* at 236, 83 S.Ct. 680. Unlike *Edwards*, however, the case now before this Court does not involve the arrest of any demonstrator, it involves the formation of a cordon of police officers amid a crowd of hundreds of people. Amnesty's contrary argument notwithstanding, the right to be free from such official action is not as clearly established as is the right not to be arrested simply for participating in a protest.

Amnesty similarly relies on the Second Circuit's decision in *Jones v. Parmley*, 465 F.3d 46, 56 (2d Cir.2006). The *Jones* case involved the arrest of protestors after some of them had entered the roadway of an interstate freeway. The Second Circuit held that even though there was an arguable lack of decisional law supporting the existence of a right to continue with a demonstration under those circumstances, the police officers should have known that their actions were unlawful to the extent that the protestors' conduct did not create a "clear and present danger" of riot, imminent violence, interference with traffic or other immediate threat to public safety. *Id.* (citing *Cantwell v. Connecticut*, 310 U.S. 296, 308, 60 S.Ct. 900, 84 L.Ed. 1213 (1940)). Again, however, the case now before this Court does not involve the arrest of protestors but instead the placement of officers in the area of a protest. The purported right Amnesty seeks to invoke in order to pierce Defendants' qualified immunity here is not as clearly established as the rights invoked by the arrested protestors in *Jones*.

The remaining cases cited by Amnesty are all similarly distinguishable from the present case. Simply stated, Amnesty has failed to show that any reasonable official in Defendants' position would have known that ordering the formation of a cordon of police officers near the sight of a permitted demonstration was a violation of the demonstrating organization's First Amendment rights. Accordingly, Amnesty has failed to allege sufficient facts to overcome Defendants' qualified immunity from suit. Therefore, the Second Amended must be dismissed.

Furthermore, dismissal *with prejudice* is appropriate in view of the fact that Amnesty has failed to state a valid claim despite having had three opportunities to do so *vis a vis* three versions of its complaint. *See* *Bryant v. Dupree*, 252 F.3d 1161 (11th Cir.2001)(noting that although leave to amend a complaint should be freely given when justice requires, it need not be given where there has been repeated failure to cure deficiencies by amendments previously allowed or when amendment would be futile).

Accordingly, it is

ORDERED that Defendant Battle and Cannon's Motions to Dismiss the Second Amended Complaint are GRANTED. The Second Amended Complaint is DISMISSED WITH PREJUDICE as to both Defendants.

### ORDER ON MOTION TO ALTER OR AMEND JUDGMENT

This matter is before the Court on Plaintiff Amnesty International, USA's Motion to Alter or Amend Judgment, filed May 4, 2007. The Court has considered the Motion and is duly advised in the premises. Pursuant to Rule 59, Federal Rules of Civil Procedure, Plaintiff asks the Court to reconsider its Order granting Defendants' Motions to Dismiss on the basis of qualified immunity. Specifically, Plaintiff takes issue with the Court's application of a heightened pleading standard in this 42 U.S.C. § 1983 civil rights case. Plaintiff argues that such a heightened pleading requirement violates the holding of the United States Supreme Court in *Leatherman v. Tarrant County*, 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993). The Court disagrees.

The Eleventh Circuit considered the Supreme Court's decision in *Leatherman* when it decided *GJR Investments, Inc. v. County of Escambia*, 132 F.3d 1359 (11th Cir.1998). There, the Eleventh Circuit noted that "[a]lthough the Supreme Court has held that courts may not impose heightened pleading requirement in § 1983 cases involving municipalities, ... and we likewise declined to extend its holding to

cases involving individual government officials, ... and we likewise decline to do so here." *Id.* at 1368. The Eleventh Circuit's caselaw since *GJR Investments* affirms that a heightened pleading standard applies in cases against individuals who assert the defense of qualified immunity. *See e.g., Washington v. Bauer,* 149 Fed. Appx. 867, 870 (11th Cir.2005) ("there is a heightened pleading requirement when a plaintiff brings § 1983 complaint against officials acting in their individual capacities"); *Dalrymple v. Reno,* 334 F.3d 991, 996 (11th Cir.2003) ("[W]e must keep in mind the heightened pleading requirements for civil rights cases, especially those involving the defense of qualified immunity."); *Gonzalez v. Reno,* 325 F.3d 1228, 1235 (11th Cir.2003) (same); *Laurie v. Alabama Court of Criminal Appeals,* 256 F.3d 1266, 1276 (11th Cir.2001) (acknowledging that "[h]eightened pleading is the law of this circuit"). Plaintiff here sued two individuals acting in their official capacity. Accordingly, application of the Eleventh Circuit's heightened pleading standard was appropriate. Therefore, it is

ORDERED that Plaintiff's Motion to Alter of Amend Judgment is DENIED.