A02A0488. HUBBARD et al. v. DEPARTMENT OF
TRANSPORTATION et al.
A02A0489. C. W. MATTHEWS CONTRACTING COMPANY, INC.
v. HUBBARD et al.
(568 SE2d 559)

MIKELL, Judge.

Young Hee Hubbard filed suit against C. W. Matthews Contracting Company, Inc. ("Matthews"), Shepherd Construction Company, Inc. ("Shepherd"), the Department of Transportation for the State of Georgia ("DOT"), and four individual drivers to recover damages for injuries she sustained in an accident on the ramp merging onto I-285 East from Georgia 400 South. Hubbard's former husband, Jim Lewis, Jr., sought damages for loss of consortium. Hubbard and Lewis appeal the trial court's denial of their motion for partial summary judgment on the issue of the liability of Matthews, Shepherd, and the DOT, and the grant of summary judgment to Matthews and

Shepherd on all claims against them. In a cross-appeal, Matthews contends that the court erred in denying its motion for summary judgment on the issue of proximate cause. We affirm the judgment of the trial court.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant. *Dover v. Mathis*, 249 Ga. App. 753 (549 SE2d 541) (2001).

The record shows that at approximately 6:53 p.m. on November 26, 1995, Hubbard drove up the ramp that merges from Georgia 400 southbound onto I-285 eastbound. That portion of I-285 was under construction at the time. She passed an orange and black sign warning traffic of "road work ahead." According to Hubbard, she came to a stop because the vehicle in front of her had stopped. That vehicle then proceeded to merge onto I-285, but Hubbard's car stalled on the ramp. Hubbard was unable to restart the engine by depressing the gas pedal several times. She exited the vehicle on the driver's side and started to move up the ramp toward a concrete barrier wall to the right of her lane of travel. Rather than proceeding directly to the wall, however, Hubbard ran behind her car and waved her hands at vehicles which were following in the merge lane. The car immediately following Hubbard's was able to avoid striking her person, but as it proceeded around her stalled vehicle, it was struck by the third car, which forced it to collide with Hubbard's disabled car. Almost immediately, the fourth and fifth cars collided and slid into the second and third cars, causing the third car to strike Hubbard, resulting in serious injuries to her left leg. At the scene of the accident, the drivers of the third and fifth cars were ticketed for following too closely. The driver of the third car was convicted, and the driver of the fifth pled no contest to the charge and paid a fine.

The record shows that in 1993, Matthews and Shepherd, operating as a joint venture, entered into a contract with the DOT for a project that called for 5.087 miles of road widening on I-285. The ongoing construction included the on-ramp where Hubbard's accident took place.

Hubbard and Lewis filed the underlying suit in August 1996 against the DOT, Matthews, Shepherd, and each of the individual drivers involved in the accident. They alleged claims of negligent design, construction, and traffic control against the DOT, Matthews, and Shepherd, as well as claims for punitive damages. The plaintiffs subsequently settled their claims with the individual drivers, leaving only the DOT and the two construction companies.

*Case No. A02A0488*

1. First, we must consider Hubbard and Lewis' argument that the trial court erred in considering the defendants' renewed motions for summary judgment after the Superior Court of Cobb County had denied their prior motions. Hubbard's suit originally was filed in Cobb County and was transferred to the Superior Court of Fulton County in December 2000. The Fulton County trial judge invited the parties to renew their motions for summary judgment. Hubbard and Lewis emphasize that the record was not expanded prior to the renewal of the motions. They argue that the doctrine of res judicata prevented the Fulton County judge from considering the motions. We disagree.

This Court has repeatedly held that "[i]t is within the discretion of a trial judge to consider a renewed motion for summary judgment even without an expansion of the record. [Cit.] There is nothing in OCGA § 9-11-56 limiting the number of times a party may make a motion for summary judgment." (Punctuation omitted.) *T. L. Rogers Oil Co. v. South Carolina Nat. Bank*, 203 Ga. App. 605, 606 (2) (417 SE2d 336) (1992). See also *Travelers Indem. Co. v. Thomas*, 172 Ga. App. 816, 818 (2) (324 SE2d 735) (1984); *Southeastern Metal Products v. Horger*, 166 Ga. App. 205, 206 (1) (303 SE2d 536) (1983). Further, res judicata would not apply, because the Cobb County trial judge denied the motions for summary judgment. According to OCGA § 9-12-40, "[a] *judgment* of a court of competent jurisdiction shall be conclusive between the same parties and their privies as to all matters put in issue." (Emphasis supplied.) No judgment was entered by the Cobb County court. Accordingly, the Fulton County trial court properly considered the renewed motions.

2. In several related errors, Hubbard and Lewis argue that the trial court erred in granting Matthews and Shepherd's motions for summary judgment. In their complaint, the plaintiffs alleged that the two contractors were responsible for the design of the traffic lanes and on-ramp at the scene of the collision and that such design was negligent. The plaintiffs also alleged negligent construction and traffic control. The trial court granted summary judgment to Matthews and Shepherd because there was no evidence that they performed the construction in a negligent manner, the two contractors did not hold themselves out as experts in design, and they did not participate in the design of the road construction. We affirm.

In *David Allen Co. v. Benton*, 260 Ga. 557 (398 SE2d 191) (1990), the Supreme Court provided the general rule regarding the liability of contractors to third parties in Georgia:

[W]here a contractor who does not hold itself out as an expert in the design of work such as that involved in the con-

troversy, performs its work without negligence, and the work is approved and accepted by the owner . . . , the contractor is not liable for injuries resulting from the defective design of the work.

Id. at 558. Similarly, this Court has held that "[a] contractor for the State engaged in work on a public project is not liable for injury or damage to private property resulting from the work performed unless that damage or injury results from the contractor's negligence or wilful tort." *C. W. Matthews Contracting Co. v. Marasco*, 184 Ga. App. 150, 151 (361 SE2d 34) (1987). The sole exception to the rule in the case of a nonnegligent contractor is that "a contractor who is an expert in the design of the type of work being done may not ignore defects in the design." *David Allen Co.*, supra at 558. Therefore, Matthews and Shepherd could be held liable only if they performed the work negligently or if they held themselves out as experts in design.

We note that the trial court denied the DOT's motion for summary judgment on the plaintiffs' negligence claims after finding that the proximate cause of Hubbard's injury was a jury question.[1] That decision has not been appealed. Thus, Hubbard and Lewis continue to maintain a cause of action against the DOT for negligent construction, design, and traffic control.

(a) Hubbard and Lewis contend that the trial court erred in finding no evidence that Matthews and Shepherd performed the construction negligently. They argue that the contractors were negligent in constructing an on-ramp to I-285 eastbound that was only 230 feet long. However, while Hubbard and Lewis raise issues concerning the design of the on-ramp, they fail to point to any evidence in the record demonstrating negligent construction on the part of the contractors.

Significantly, the record shows that Shepherd did not perform any construction at all on the eastbound side of I-285, where Hubbard's accident took place. Donald Mayo, a vice president of Shepherd and the project manager over Shepherd's portion of the I-285 construction, deposed that Matthews and Shepherd bid on the I-285 project as a joint venture, and that the two companies agreed that Matthews would perform all work on the eastbound side while Shepherd would work on the westbound side. The two contractors executed a joint venture agreement, which expressly provided that "Shepherd shall furnish all labor, materials, equipment, and all other things necessary to perform the Contract Roadway work items required in connection with the West bound lanes on the Project." The written agreement contained an identical provision regarding

---

[1] The court granted the motion for summary judgment on Hubbard and Lewis' claims against the DOT for punitive damages. The appellants have not appealed that decision.

Matthews' work on the eastbound side. Hubbard has not alleged that Shepherd negligently constructed the westbound portion of I-285, nor has she shown any evidence of negligent construction by Matthews on the eastbound side.

Because Hubbard and Lewis failed to present any evidence supporting their claims of negligent construction against Matthews or Shepherd, the trial court did not err in granting summary judgment on this ground. See *David Allen Co.*, supra.

(b) Next, we address Hubbard and Lewis' argument that Matthews and Shepherd should be held liable for the allegedly negligent design of the ramp. In support of their claims, Hubbard and Lewis provided the affidavit of traffic engineer Herman Hill, who stated that, in his opinion, the DOT and the contractors improperly shortened the on-ramp, based on DOT specifications and known traffic speeds on I-285. Hubbard and Lewis assign error to the trial court's conclusion that the DOT, not the two contractors, was responsible for the design of the on-ramp. We find no error.

Georgia law dictates that the DOT shall have control and responsibility for all construction and maintenance of the state highway system. OCGA § 32-2-2 (a) provides, in pertinent part:

> (1) The [DOT] shall plan, designate, improve, manage, control, construct, and maintain a state highway system and shall have control of and responsibility for all construction, maintenance, or any other work upon the state highway system and all other work which may be designated to be done by the department by this title or any other law. . . . (3) The [DOT] shall provide for surveys, plans, maps, specifications, and other things necessary in designating, supervising, locating, abandoning, relocating, improving, constructing, or maintaining the state highway system or any part thereof, or any activities incident thereto, or in doing such other work on public roads as the department may be given responsibility for or control of by law.

The plaintiffs argue that Matthews and Shepherd participated in the design of the ramp; however, the record does not support their allegation. Dennis Womack, who at the time in question was employed by the DOT as the project engineer on the I-285 widening project,[2] deposed that the plans for the project were designed and drafted by the DOT and that he was responsible for ensuring that the contractors complied with the DOT plans. Roy H. Jump, a vice presi-

---

[2] Womack became employed by Matthews in 1997, approximately two years after the accident.

dent of Matthews, testified in his deposition that Matthews constructed its portion of the project pursuant to the DOT designs.

In support of their argument that the contractors participated in the design, Hubbard and Lewis emphasize one answer Womack provided during his deposition, in which he responded affirmatively when asked whether it was correct that "both Matthews and DOT were involved in reviewing the plans, making sure they were accurate, making any changes to the plans that were needed." However, Womack's testimony continued that Matthews reviewed the construction "to make sure that it was in compliance with the final plans." At most, the evidence shows that employees of Matthews made suggestions to the DOT regarding certain practical aspects of the project design to ensure that the construction complied with the DOT contract. For instance, Jump testified that he prepared a diagram to establish the width of the median shoulder. He explained that his diagram deviated slightly from the DOT plans by reducing the width of the shoulder, but that the change was required in order for the construction to comply with the DOT contract, which required that the plans accommodate certain traffic control configurations. Jump clarified that the diagram merely expressed what had already been set out in the DOT contract. He submitted the diagram to the DOT for final approval, which was granted.

Womack testified that the only proposed change to the design he recalled that either Matthews or Shepherd may have made concerning the location of Hubbard's accident was to extend the length of the portable barrier wall. However, Womack could not recall if either of the contractors made the suggestion. Further, any official changes to the plans were made by the DOT with specific direction to the contractors. Womack also testified that the design of the ramp at issue was modified after Hubbard's accident to increase the length of the ramp.

There was no evidence that the DOT ever relinquished control of the design of the project to either of the contractors. In fact, Jump repeatedly testified that Matthews does not design roads and did not design the I-285 project. Similarly, Mayo testified that Shepherd could not deviate from the construction plans without DOT approval. Accordingly, the trial court properly granted Matthews and Shepherd's motions for summary judgment on the negligent design claims. See *Bob v. Scruggs Co.*, 204 Ga. App. 375, 377 (1) (419 SE2d 100) (1992).

(c) Hubbard and Lewis challenge the trial court's grant of summary judgment on their claims of negligent traffic control against Matthews and Shepherd. They allege that Matthews and Shepherd failed to provide adequate lighting or traffic control devices to protect

the public at the construction site, in violation of the Manual on Uniform Traffic Control Devices ("MUTCD"). Again, we find no error.

In *Marasco, supra*, we held that because the contractor "neither designated nor determined the location for or the manner of placement of" a road sign struck by the plaintiff's vehicle, "but instead complied with explicit directions, specifications and orders of the [DOT] with respect to erection of the sign alongside the roadway," that contractor could not be held liable for the plaintiff's injuries. Id. at 150. Here we reach a similar result.

OCGA § 32-6-50 (a) provides that "[t]he [DOT] shall promulgate uniform regulations governing the erection and maintenance on the public roads of Georgia of signs, signals, markings, or other traffic-control devices, such uniform regulations to supplement and be consistent with the laws of this state." Subsection (b) of the statute continues: "In conformity with its uniform regulations, the [DOT] shall place and maintain, or cause to be placed and maintained, such traffic-control devices upon the public roads of the state highway system as it shall deem necessary to regulate, warn, or guide traffic. . . ."

In the case sub judice, the contract between the DOT and the two contractors provided specific guidelines for traffic control during construction and required Womack's approval of any traffic control plans or signs. Section 150.01 (E) of the contract states that "[t]he contractor shall secure the Engineer's approval of the contractor's proposed plan of operation, sequence of work and methods for providing for the safe passage of traffic before it is placed in operation." Section 150.03 (D) provides: "Temporary guide, warning, or regulatory signs required to direct traffic shall be furnished, installed, reused and maintained by the Contractor in accordance with the MUTCD, the Plans, Special Provisions, *or as directed by the Engineer*." (Emphasis supplied.) Likewise, in Section 150.01 (G), the DOT reserved the right to restrict construction when, in the opinion of its project engineer, the work would hinder traffic flow on days involving unusual traffic conditions. The contract also prohibited the contractors from removing existing signs without the approval of the engineer. Finally, Section 150.08 mandates that "[f]ailure of the Contractor to comply with this Specification shall be reason for the Engineer suspending all other work on the Project."

According to Jump's deposition testimony, all warning signs, construction signs, barrier walls, reflective devices, obstacle markers, and other traffic control devices placed at or around the construction site were erected, implemented, and constructed by Matthews pursuant to the designs, plans, directives, and specifications of the DOT. Womack deposed that the construction signs were placed in accordance with the MUTCD and the contract drawings, that he determined whether the signs complied with the MUTCD, that the con-

tract and the MUTCD controlled the placement of barrier walls, and that he approved the barrier walls before Matthews positioned them at the construction site.

Because it was the DOT's responsibility to designate the location for, and the manner of placement of, the traffic control devices and to approve all traffic control plans, we conclude that the trial court properly granted summary judgment to Matthews and Shepherd on Hubbard's negligent traffic control claims. See *Marasco*, supra at 152.

(d) Hubbard and Lewis assign error to the trial court's grant of summary judgment to Matthews and Shepherd on the issue of punitive damages. The trial court found no evidence that the two contractors acted wilfully or maliciously. The plaintiffs argue that Matthews and Shepherd are liable for punitive damages because they knew about and ignored a number of prior collisions at the location of Hubbard's accident. We affirm.

OCGA § 51-12-5.1 (b) provides:

> Punitive damages may be awarded only in such tort actions in which it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences.

A finding of negligence, even gross negligence, is insufficient to support a claim for punitive damages. *Southern R. Co. v. O'Bryan*, 119 Ga. 147, 148-149 (1) (45 SE 1000) (1903). Hubbard and Lewis' brief cites no evidence in the record demonstrating wilful or malicious conduct to support a claim for punitive damages against Matthews and Shepherd, and our review of the record reveals none. Therefore, the trial court did not err.

In summary, we conclude that the trial court properly entered summary judgment in favor of Matthews and Shepherd on Hubbard's negligence claims and on their claim for punitive damages.

3. Hubbard and Lewis argue that the trial court erred in denying their motion for partial summary judgment. In their motion, the plaintiffs contended that the DOT, Matthews, and Shepherd committed negligence per se by violating provisions of the MUTCD. They based this claim on the fact that the contract between the DOT and the two contractors incorporated provisions of the MUTCD.

As the trial court recognized, generally, negligence per se arises when a statute or ordinance is violated. *Central Anesthesia Assoc. v. Worthy*, 173 Ga. App. 150, 152-153 (325 SE2d 819) (1984), aff'd, 254 Ga. 728 (333 SE2d 829) (1985). The violation of certain mandatory

regulations may also amount to negligence per se if the regulations impose a legal duty. See *Dupree v. Keller Indus.*, 199 Ga. App. 138, 141 (1) (404 SE2d 291) (1991). OCGA § 51-1-6 provides: "When the law requires a person to perform an act for the benefit of another or to refrain from doing an act which may injure another, although no cause of action is given in express terms, the injured party may recover for the breach of such legal duty if he suffers damage thereby." Assuming that a violation of a statute or mandatory regulation has occurred, before negligence per se can be determined, a trial court must consider "(1) whether the injured person falls within the class of persons it was intended to protect and (2) whether the harm complained of was the harm [the statute] was intended to guard against." (Citations and punctuation omitted.) *Central Anesthesia Assoc.*, supra, 173 Ga. App. at 153. Finally, if the court finds negligence per se, the plaintiffs must then demonstrate a causal connection between the negligence per se and the injury. *Duncan v. Randolph*, 236 Ga. App. 566, 567 (512 SE2d 688) (1999). "And it is generally a jury question as to whether or not such negligence proximately caused the injury." Id.

Therefore, in order to be entitled to partial summary judgment, Hubbard and Lewis would have to demonstrate by undisputed evidence that the MUTCD regulations are mandatory and have the force of law, that Hubbard was in the protected class, that the harm she suffered was the type of harm the MUTCD was intended to guard against, and that the alleged negligence per se proximately caused Hubbard's injuries. *Central Anesthesia Assoc.*, supra, 173 Ga. App. at 153. Because Hubbard and Lewis failed to make the requisite showings, we conclude that the trial court properly denied their motion for partial summary judgment.

First, the trial court correctly found that Hubbard and Lewis failed to prove that the MUTCD regulations at issue were mandatory and could be used as the exclusive standard of care. As a preliminary matter, we must address Hubbard and Lewis' failure to tender a copy of the MUTCD into evidence. In two related errors, Hubbard and Lewis contend that the court erred in not taking judicial notice of the MUTCD when it had been incorporated into the contract between the DOT and the two contractors. In its order, the trial court properly declined to take judicial notice of the MUTCD, because a certified copy had not been included in the record. *Donaldson v. Dept. of Transp.*, 236 Ga. App. 411, 412-413 (1) (b) (511 SE2d 210) (1999). In an effort to circumvent their failure to tender the MUTCD, Hubbard and Lewis assign error to the court's finding that they failed to demonstrate that the construction on I-285 was a federal aid project, which would have enabled the court to take judicial notice of the MUTCD. The plaintiffs are correct that the construction at issue was

a federal aid project; therefore, under *Donaldson*, supra at 413-414, the trial court could have taken judicial notice of the MUTCD had it been tendered. However, in *Donaldson*, we held that because the parties failed to request that the court take judicial notice of the MUTCD, even though it had been incorporated into the underlying contract, the court could not determine if the regulations gave rise to negligence per se. Id. at 415-416. Thus, in the case sub judice, the court did not err by not taking judicial notice of the MUTCD. Furthermore, we conclude that even if Hubbard and Lewis had tendered the MUTCD into evidence, it was not error for the court to deny their motion for partial summary judgment on the issue of negligence per se.

"[T]he MUTCD contains standards that fall into mandatory, advisory, and permissive categories." *Dept. of Transp. v. Cushway*, 240 Ga. App. 464, 465 (523 SE2d 340) (1999). This Court has recognized that "[t]he MUTCD is not 'the exclusive source of engineering and design standards' especially as to permissive and advisory instructions." *Dept. of Transp. v. Mikell*, 229 Ga. App. 54, 58 (1) (a) (493 SE2d 219) (1997), citing *Dept. of Transp. v. Brown*, 267 Ga. 6, 8 (2) (471 SE2d 849) (1996). Further, the Supreme Court has stated that while the MUTCD sets forth generally accepted engineering or design standards, it is not the exclusive source of these standards. *Brown*, supra. In the case sub judice, in addition to their failure to tender a certified copy of the MUTCD, Hubbard and Lewis failed to establish whether the MUTCD standards alleged to have been violated were mandatory. Additionally, Hill, the plaintiffs' expert witness, admitted that the MUTCD is not a substitute for engineering judgment. Significantly, § 1A-4 of the MUTCD states that "[w]hile this Manual provides standards for design and application of traffic control devices, the Manual is not a substitute for engineering judgment. It is the intent that the provisions of this Manual be standards for traffic control devices installation, *but not a legal requirement for installation.*" (Emphasis supplied.)

Accordingly, even if we assume that Hubbard was within the class of persons protected by the MUTCD and that her injury the type of harm the standards were intended to prevent, Hubbard and Lewis would not be entitled to partial summary judgment because they were unable to demonstrate that the MUTCD provisions were mandatory or that they created a legal duty on the part of the DOT, Matthews, and Shepherd. Furthermore, even if Hubbard and Lewis had demonstrated negligence per se, partial summary judgment would still not have been proper, because there are substantial questions of fact regarding the proximate cause of Hubbard's injury, including the negligence of the individual drivers and Hubbard's con-

tributory negligence. Thus, Hubbard and Lewis were not entitled to partial summary judgment.

4. In its order, the trial court, sua sponte, held that "to the extent that Plaintiffs' motion is based upon any other violation of the contract between the Defendants, this Court finds that summary judgment is not proper." The trial court reasoned that the plaintiffs lacked standing to contest a violation of the terms of the contract between the DOT, Matthews, and Shepherd. The court went on to grant summary judgment to the defendants on "all claims based upon any violation of the contract between the Defendants, on the basis of lack of standing." Hubbard and Lewis assign error to the trial court's ruling. We affirm.

Contrary to Hubbard and Lewis' argument, we have held that a trial court may grant summary judgment sua sponte. *Ga. Receivables v. Te*, 240 Ga. App. 292 (523 SE2d 352) (1999). Hubbard and Lewis argue that standing is an affirmative defense and that the defendants waived it. However, lack of standing is not found in the list of affirmative defenses that must be pleaded or waived pursuant to OCGA § 9-11-8 (c).

In their appellate brief, Hubbard and Lewis cite *Backus v. Chilivis*, 236 Ga. 500, 503 (224 SE2d 370) (1976), and state that "Plaintiffs['] claims are not actions on the contract, but 'are tort actions founded on negligence.'" Their reliance on *Backus* is misplaced, however, as that case expressly holds that "[i]n order for a third party to have standing to enforce a contract . . . it must clearly appear from the contract that it was intended for his benefit." Id. at 502 (II). Further, it stands to reason that if all of Hubbard and Lewis' claims are torts, then they have not been harmed by the court's grant of summary judgment on any claims based on alleged contract violations.

The trial court properly concluded that Hubbard and Lewis lacked standing to assert any claims arising from violations of the contract between the DOT and the two contractors. Under OCGA § 9-2-20 (b), a third-party beneficiary may sue to enforce a contract; however, the third-party beneficiary must be the intended beneficiary of the contract. The mere fact that a third party would benefit incidentally from the performance of the contract is not alone sufficient to give such person standing to sue on the contract. *Backus*, supra at 502. Hubbard was not a party to the contract and was not an intended third-party beneficiary of the contract. Therefore, she and Lewis have no standing to sue for an alleged breach.

### Case No. A02A0489

5. In a cross-appeal, Matthews contends that the trial court erred in denying its motion for summary judgment on the issue of

proximate cause. Based on our holding in Case No. A02A0488, in which we affirmed the trial court's grant of summary judgment to Matthews on Hubbard and Lewis' negligence and contract claims, Matthews' cross-appeal is moot, and we need not address it.

6. Hubbard and Lewis move this Court to impose a frivolous appeal penalty on Matthews, pursuant to Court of Appeals Rule 15 (b). They argue that Matthews' appeal lacks merit. Generally, frivolous appeal sanctions are imposed only upon the determination that the appeal was filed solely for the purpose of delay. *Warnock v. Davis*, 267 Ga. 336 (2) (478 SE2d 124) (1996); OCGA § 5-6-6. Finding no basis on which to impose such penalty, we hereby deny Hubbard and Lewis' motion for sanctions for frivolous appeal.

*Judgment affirmed. Andrews, P. J., and Phipps, J., concur.*

DECIDED JULY 3, 2002 — ▮▮▮▮▮▮▮▮▮

*James W. Lewis, George R. Dean,* for appellants.

*Thurbert E. Baker, Attorney General, Moore, Ingram, Johnson & Steele, William R. Johnson, Jere C. Smith, John H. Ross, Cobb, Grabbe, Spillers & Irwin, Sharon C. Barnes, Susan J. Levy,* for appellees.