**Timothy AMICK, Plaintiff,**

v.

**BM & KM, INC. and Balu Patel, Defendants.**

**No. CIV.A.1:03–CV–439–BB.**

United States District Court,
N.D. Georgia,
Atlanta Division.

Aug. 5, 2003.

Joshua H. Norris, Office of Joshua H. Norris, Atlanta, Henry Timothy Willis, Disability Law and Policy Center of GA, Inc., Tucker, for Timothy H. Amick, plaintiff.

Steven Keith Leibel, Charles Matthew Smith, Casey Gilson Leibel, Atlanta, for BM & KM, Inc., Balu Patel, defendants.

## *ORDER*

MARTIN, District Judge.

This action, alleging disability discrimination, is before the court on Timothy

Amick's motion to amend the complaint [Doc. No. 9–1].

## I.  *Factual and Procedural Background*

In February 2002, Plaintiff Timothy Amick ("Amick") and a co-worker traveled to Norcross, Georgia on a business trip. Amick, a legally blind individual, utilizes a service dog to aid in his daily activities. After completing the day's business, Amick and his associate stopped at a franchised Days Inn motel, operated by BM & KM, Inc. ("BM & KM"), to secure lodging for the evening. When Amick's associate attempted to secure a room for herself, Amick, and Amick's service dog, she was informed of the motel's policy prohibiting pets and denied accommodation. Even after some protest, and a telephone call to the Days Inn manager, Balu Patel ("Patel"), Amick and his associate were still denied lodging. Eventually, the plaintiff and his companions left the Days Inn and secured a room elsewhere.

On February 14, 2003, Amick filed the instant action against Patel and BM & KM (collectively, the "defendants") to end the defendants' allegedly discriminatory behavior. In his original complaint, Amick states three counts. The first count alleges discrimination in violation of the Americans with Disabilities Act. The second count contends that the defendants violated two Georgia statutes, one regulating the behavior of innkeepers, *see* Ga.Code Ann. § 43–21–3, and one prohibiting discrimination in public places based on the utilization of a service animal, *see* Ga.Code Ann. § 30–4–2. Amick's third count asserts a claim for intentional infliction of emotional distress. Based on these claims, Amick seeks declaratory and injunctive relief, as well as compensatory and punitive damages.

Amick now comes before the court for leave to amend his complaint. An examination of Amick's motion to amend and proposed amended complaint shows that he wishes to accomplish two goals by altering his complaint. First, Amick seeks to clarify his reliance upon Ga.Code Ann. § 51–1–6 as authority for recovering damages for the alleged violations of the two applicable state statutes. Second, Amick wishes to add two negligence per se claims based upon the alleged violations of the same statutory provisions. The defendants oppose these amendments, claiming that, pursuant to Georgia law, the proposed amendments are futile. Accordingly, the court now resolves Amick's motion for leave to amend his complaint [Doc. No. 9–1].

## II.  *Motion to Amend Standard*

Once the time period for amending a pleading as of right has expired, Rule 15(a) of the Federal Rules of Civil Procedure provides amendment "only by leave of court or by written consent of the adverse party." The decision whether to grant leave to amend a complaint is within the sole discretion of the district court. *Laurie v. Alabama Ct. of Crim. App.,* 256 F.3d 1266, 1274 (11th Cir.2001). However, Rule 15(a) limits a court's discretion by mandating that "leave shall be freely given when justice so requires." *Bryant v. Dupree,* 252 F.3d 1161, 1163 (11th Cir.2001). The Supreme Court has held that "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject for relief, he [or she] ought to be afforded an opportunity to test his claim on the merits." *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). Because leave to amend is to be "freely given," there must be a substantial reason to deny a motion to amend. *Id.; Laurie,*

256 F.3d at 1274. Substantial reasons justifying a denial include "undue delay, bad faith, dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendment previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of the amendment." *Foman,* 371 U.S. at 182, 83 S.Ct. 227; *see also Laurie,* 256 F.3d at 1274; *Bryant,* 252 F.3d at 1163; *Hargett v. Valley Fed. Savings Bank,* 60 F.3d 754, 761 (11th Cir. 1995).

■ In this case, the defendants do not claim that Amick has unduly delayed in filing his proposed amendment, nor do they argue that they are prejudiced by the potential amendment. Indeed, the defendants cannot rely on either of these grounds as justification for denying leave to amend, as the discovery period has just begun, and Amick filed the proposed amendment within the time allotted by the Joint Preliminary Report and Discovery Schedule. Doc. No. 5, at 8. Instead, the defendants argue that Amick's proposed amendments are futile. In the Eleventh Circuit, a proposed amendment is futile when the allegations of the proffered complaint would be unable to withstand a motion to dismiss. *See Vanderberg v. Donaldson,* 259 F.3d 1321, 1326–27 (11th Cir. 2001); *Brewer–Giorgio v. Producers Video, Inc.,* 216 F.3d 1281 (11th Cir.2000). "Where it appears a more carefully drafted complaint might state a claim upon which relief can be granted, . . . a district court should give a plaintiff an opportunity to amend his complaint instead of dismissing it." *Ziemba v. Cascade Int'l, Inc.,* 256 F.3d 1194, 1213 (11th Cir.2001) (quoting *Bank v. Pitt,* 928 F.2d 1108, 1112 (11th Cir.1991)). However, if the proposed complaint does not state a claim, then leave to amend should be denied. *Id.*

## III. *Amick's Proposed Amendments*

In alleging that Amick's proposed amendments are futile, the defendants rely on the fact that the state statutory provisions cited by Amick do not, themselves, create civil causes of action. It is undisputed that neither section 30–4–2, nor section 43–21–3, explicitly provides an individual with a civil cause of action for its violation. Recognizing the absence of explicit language allowing civil remedies for violations, Amick now seeks to rely on Ga.Code Ann. § 51–1–6 and the doctrine of negligence per se as the bases for his damages claims under these Georgia statutes. The defendants, relying extensively on one Georgia Supreme Court decision, assert that state law prevents Amick from pursuing damages under these theories.

### A. *Damages for Breach of Legal Duty*

■ To prevail on a claim for negligence under Georgia common law, a plaintiff must establish four elements: duty, breach of duty, proximate cause, and actual damage. *Bradley Center, Inc. v. Wessner,* 250 Ga. 199, 200, 296 S.E.2d 693, 695 (1982). In Georgia, negligence per se arises when a defendant violates a statute or ordinance, satisfying, as a matter of law, the first two elements of a negligence claim. *Hubbard v. Department of Transp.,* 256 Ga.App. 342, 349, 568 S.E.2d 559, 566 (2002). Once establishing these first two elements through negligence per se, the plaintiff must go on to demonstrate that the defendant's statutory breach was the proximate cause of the plaintiff's injury. *Id.* The same result is reached through application of section 51–1–6, which provides:

> When the law requires a person to perform an act for the benefit of another or to refrain from doing an act which may injure another, although no cause of ac-

tion is given in express terms, the injured party may recover for breach of such legal duty if he suffers damage thereby.

Ga.Code Ann. § 51–1–6; *Hubbard,* 256 Ga. App. at 350, 568 S.E.2d at 566; *St. Mary's Hosp. of Athens, Inc. v. Radiology Prof'l Corp.,* 205 Ga.App. 121, 126, 421 S.E.2d 731, 736 (1992) (stating that, pursuant to section 51–1–6, "a cause of action will lie for breach of a duty arising under a statute or common law"); *Cardin v. Telfair Acres of Lowndes County, Inc.,* 195 Ga. App. 449, 450, 393 S.E.2d 731, 733 (1990) (finding "there is not much room to doubt that civil cause of action will lie for damages caused by a breach of a legal duty of diligence proscribed by statute").

■ Under both the common law and statutory theories of recovery, however, the fulfillment of the duty and breach elements depends on "(1) whether the injured person falls within the class of persons [the statute] was intended to protect and (2) whether the harm complained of was the harm [the statute] was intended to guard against." *Central Anesthesia Assocs. v. Worthy,* 173 Ga.App. 150, 153, 325 S.E.2d 819, 824 (1984); *see also Hubbard,* 256 Ga.App. at 350, 568 S.E.2d at 567; *Odem v. Pace Acad.,* 235 Ga.App. 648, 657, 510 S.E.2d 326, 333 (1998). Accordingly, the purpose of the statute relied on by the plaintiff as creating a legal duty for the defendant is important in assessing claims

under both section 51–1–6 and the negligence per se doctrine.[1] *Id.* Where the cited statute does not govern the relationship between the parties, no cause of action exists, and recovery of damages based on violation of that particular statute is unwarranted. *Id.; Brantley v. Custom Sprinkler Sys.,* 218 Ga.App. 431, 432, 461 S.E.2d 592, 593 (1995).

■ The first statute relied on by Amick as establishing a legal duty for the defendants is section 30–4–2, which provides:

(a) Blind persons, persons with visual disabilities, persons with physical disabilities, and deaf persons are entitled to full and equal accommodations, advantages, facilities, and privileges ... at hotels, lodging places, places of public accommodation, amusement, or resort, and other places to which the general public is invited ...

(b)(1) Every totally or partially blind person shall have the right to be accompanied by a guide dog, ... especially trained for the purpose, in any of the places listed in subsection (a) of this Code section.

Ga.Code Ann. § 30–4–2. As such, section 30–4–2 creates an obligation for the defendants to provide blind individuals who use service animals with full and equal hotel accommodations. *Id.* Undeniably, section 30–4–2 is intended to protect blind individ-

---

**1.** Amick seeks to amend his complaint to add negligence per se and section 51–1–6 claims based on violations of the same Georgia statutes. *See* Ga.Code Ann. §§ 30–4–2; 43–21–3. The parties dispute whether independent causes of action arise under the negligence per se doctrine and section 51–1–6. Doc. No. 10, at 11–14; Doc. No. 11, at 6–8. Although the court could find no case law expressly addressing whether these two theories of recovery are actually independent, the court

need not resolve this debate, as the court concludes that the same standards apply to claims arising under both theories. *See Hubbard,* 256 Ga.App. at 350, 568 S.E.2d at 567; *Odem,* 235 Ga.App. at 657, 510 S.E.2d at 333. Various Georgia cases treat recovery under both theories identically. *See Hubbard,* 256 Ga.App. at 350, 568 S.E.2d at 567; *Wages v. Amisub of Ga.,* 235 Ga.App. 156, 508 S.E.2d 783 (1998); *Dupree v. Keller Indus., Inc.,* 199 Ga.App. 138, 404 S.E.2d 291 (1991).

uals employing service animals, such as Amick, from discrimination in public accommodations, such as the Days Inn operated by the defendants. *Id.* The purportedly injured plaintiff in this case, Amick, falls directly into the category of individuals section 30–4–2 "was intended to protect," and the harm complained of, denial of accommodation based on use of a service animal, is the exact harm the statute "was intended to guard against." *Hubbard,* 256 Ga.App. at 350, 568 S.E.2d at 567. Accordingly, Amick has established the existence of a legal duty under section 30–4–2 applicable to the defendants.

■ Likewise, section 43–21–3 imposes a legal duty upon innkeepers to receive all guests of good character. The statute states:

An innkeeper who advertises himself as such is bound to receive as guests, so far as he can accommodate them, all persons of good character who desire accommodations and who are willing to comply with his rules.

Ga.Code Ann. § 43–21–3. Accordingly, the statute obligates the defendants to provide lodging to all persons who desire it, as long as they are of good character and willing to comply with the hotel rules. *Id.* Importantly, section 43–21–3 protects the general public by preventing hotel owners and operators from denying overnight accommodations to individuals they find undesirable as guests, such as individuals with disabilities. *See Brown v. Hilton Hotels Corp.,* 133 Ga.App. 286, 289, 211 S.E.2d 125, 128 (1974) (describing the "public duty" created by this code section). Again, the statute "was intended to protect" potential guests, such as Amick, and the harm complained of, denial of accommodation, is the harm the statute "was intended to guard against." *Hubbard,* 256

Ga.App. at 350, 568 S.E.2d at 567. Therefore, in addition to the duty under section 30–4–2, Amick has also demonstrated a legal duty applicable to Patel and BM & KM pursuant to section 43–21–3.

■ Accepting the allegations of the proposed amended complaint as true, the defendants breached the legal duties imposed by sections 30–4–2 and 43–21–3 when they prohibited Amick and his service dog from staying at their hotel. Amick allegedly suffered injury, including humiliation, embarrassment, and emotional distress, as a direct and proximate result of the defendants' actions. Accordingly, Amick's proposed amended complaint alleges all the elements necessary for recovery under the theory of negligence per se and section 51–1–6. *Hubbard,* 256 Ga. App. at 350, 568 S.E.2d at 567. Since Amick's proffered complaint would survive a motion to dismiss, Amick may amend his complaint to pursue damages for violations of sections 30–4–2 and 43–21–3. *See, e.g., Diedrich v. Miller & Meier & Assocs.,* 254 Ga. 734, 334 S.E.2d 308 (1985) (permitting cause of action under section 51–1–6 for violation of trade name protections); *Sutter v. Hutchings,* 254 Ga. 194, 327 S.E.2d 716 (1985)(recognizing cause of action under section 51–1–6 for violations of statutes governing sale of alcoholic beverages), *abrogated by statute on other grounds as stated in Riley v. H & H Operations, Inc.,* 263 Ga. 652, 436 S.E.2d 659 (1993); *Daigrepont v. Teche Greyhound Lines,* 189 Ga. 601, 7 S.E.2d 174 (1940) (stating cause of action would exist under precursor statute to section 51–1–6 where common carrier breaches legal duty to transport individual to destination); *Val D'Aosta Co. v. Cross,* 241 Ga.App. 583, 526 S.E.2d 580 (1999) (allowing negligence per se claim based on motel owner's obligation to maintain a safe handicap ramp); *Anderson v. Turton Dev.,*

*Inc.*, 225 Ga.App. 270, 483 S.E.2d 597 (1997) (same); *Peters v. Hyatt Legal Servs.*, 211 Ga.App. 587, 440 S.E.2d 222 (1993) (allowing action under section 51–1–6 against notary who failed to fulfill legal duty to check signature prior to notarization); *St. Mary's Hosp. of Athens, Inc.*, 205 Ga.App. at 126, 421 S.E.2d at 736 (allowing a cause of action under section 51–1–6 for violations of hospital bylaws); *Dupree*, 199 Ga.App. at 138, 404 S.E.2d at 291 (recognizing cause of action under section 51–1–6 for violations of Occupational Safety and Health Administration regulations).

### B. *Exception for Employment At-Will Actions*

In arguing that Amick's claims are futile, the defendants rely on the Georgia Supreme Court's decision in *Reilly v. Alcan Aluminum Corp.*, 272 Ga. 279, 280, 528 S.E.2d 238, 240 (2000). The *Reilly* plaintiff filed suit in this court, claiming that he had been discharged on the basis of age, in violation of Ga.Code Ann. § 34–1–2, a state statute prohibiting age discrimination. The plaintiff argued that, although section 34–1–2 did not expressly create a cause of action, section 51–1–6 entitled him to recover damages for the employer's alleged violation of the statute. *Id.* at 279–80, 528 S.E.2d at 239–40. This court dismissed the plaintiff's complaint for failure to state a claim upon which relief may be granted, and the plaintiff appealed. On appeal, the Eleventh Circuit certified to the Supreme Court of Georgia the question of whether section 51–1–6 gave rise to a cognizable claim for breach of Georgia's age discrimination statute.

*Reilly v. Alcan Aluminum Corp.*, 221 F.3d 1170, 1171 (11th Cir.2000).

In response to the Eleventh Circuit's certified question, the Supreme Court of Georgia held that the federal district court had correctly dismissed the plaintiff's complaint. *Reilly*, 272 Ga. at 279–80, 528 S.E.2d at 239–40. The court emphasized that the plaintiff's "status as an at-will employee is dispositive of the certified questions," because the statutorily-protected doctrine of at-will employment, as codified at Ga.Code Ann. § 34–7–1,[2] disposed of any cause of action for wrongful discharge, absent the General Assembly's enactment of a statute specifically creating such a cause of action. *Id.* at 279, 528 S.E.2d at 239; *see also Eckhardt v. Yerkes Reg'l Primate Ctr.*, 254 Ga.App. 38, 39, 561 S.E.2d 164, 165 (2002); *Stanford v. Paul W. Heard & Co.*, 240 Ga.App. 869, 870, 525 S.E.2d 419, 421 (1999). The Georgia age discrimination statute itself did not provide for a civil remedy. *Reilly*, 272 Ga. at 280, 528 S.E.2d at 240.

In light of the fundamental nature of the at-will employment principle, and the failure of the General Assembly to create a civil cause of action for violation of the age discrimination statute, the court ruled that section 51–1–6 "cannot be read so as to create a civil action for age discrimination . . . ." *Id.* at 280–81, 528 S.E.2d at 240. According to the Georgia Supreme Court, section 51–1–6 codified general principles of tort law, rather than creating an exception to the statutory doctrine of at-will employment. *Id.* at 280, 528 S.E.2d at 240. The court summarized its ruling by concluding that:

> Because the inability of an at-will employee to sue in tort for wrongful dis-

---

**2.** Section 34–7–1 provides, in relevant part, that "[a]n indefinite hiring may be terminated at will by either party."

charge is a fundamental statutory rule governing employer-employee relations in Georgia; because the General Assembly did not specifically provide a civil action as a remedy when enacting Georgia's age discrimination statute, although it has specified such remedies in other areas of employer-employee relations; and because the specific provisions of [the employment at-will statutes] must control over the more general tort provisions of §§ 51–1–6 and 51–1–8, we conclude that the General Assembly did not intend for age-discrimination to provide the basis for a tort of wrongful discharge in this State.

*Id.* at 280–81, 528 S.E.2d at 240.

Accordingly, even a cursory reading of *Reilly* indicates that the decision is based heavily upon the special status of the employment at-will doctrine in Georgia jurisprudence. *See Mattox v. Yellow Freight Sys.*, 243 Ga.App. 894, 534 S.E.2d 561 (2000). Indeed, Georgia courts have strictly construed the employment at-will statute, section 34–7–1, as prohibiting all lawsuits based on wrongful termination, unless the Georgia legislature specifically creates an exception to the right to terminate at will. *Balmer v. Elan Corp.*, 583 S.E.2d 131 (Ga.Ct.App.2003). As such, Amick's lawsuit is easily distinguishable from *Reilly*. Amick has not filed suit against his employer. Instead, he asserts a claim based on discrimination in public accommodations. Although there are similarities between the discrimination statutes in *Reilly* and the case sub judice, the court cannot conclude that the employment-specific analysis of *Reilly* is applicable to Amick's lawsuit.

To overcome this obvious dissimilarity, the defendants argue that, "[m]uch like at-will employment, the freedom to enter into

(or decline to enter into) contractual relations is a long-held and fundamental principle of [Georgia] law." Doc. No. 10, at 8. The defendants assert that, as with the statutory exceptions to the at-will doctrine, the General Assembly has seen fit to create specific, limited exceptions to the right of freedom to contract. Among the purported exceptions noted by the defendants are the mandates of sections 30–4–2 and 43–21–3, which require innkeepers to provide equal access to accommodations. The defendants emphasize, however, that these purported exceptions to the freedom of contract principle do not specifically create civil causes of action. "Given the long-established and fundamental principle of freedom of contract, and in light of the General Assembly's refusal to enact an explicit civil remedy provision for violation of these statutes," the defendants believe the current action presents "a closely analogous situation" to *Reilly*, such that the reasoning of *Reilly* "should control the Court's ruling on this matter." *Id.* at 8–9.

Contrary to the defendants' assertion, however, the court does not believe that *Reilly* controls the instant action. Importantly, as noted above, the at-will employment doctrine has special status in Georgia law. *Balmer*, 583 S.E.2d 131, 2003 WL 21058307, at *1; *Eckhardt*, 254 Ga. App. at 39, 561 S.E.2d at 165; *Mattox*, 243 Ga.App. at 895, 534 S.E.2d at 562. Accordingly, judicially-created public policy exceptions to the employment at-will doctrine are prohibited, and employees cannot resort to the courts to recover for wrongful discharge, unless the legislature passes a law allowing them to do so. *Id.* In contrast, Georgia courts are permitted much more involvement in contract cases. Judicially-developed contract doctrines are allowed under certain circumstances. *See Northside Hosp., Inc. v. McCord*, 245

Ga.App. 245, 537 S.E.2d 697 (2000) (recognizing that Georgia public policy favors freedom of contract, but employing a judicially-developed exception for partial restraints on trade). Moreover, Georgia courts are permitted to declare contracts contrary to public policy and void, where legislative intent is clear, even if no statute expressly creates an exception to the freedom to contract doctrine. *See* Ga. Code Ann. § 13–8–2(a) (stating that a contract against public policy cannot be enforced); *Porubiansky v. Emory Univ.,* 156 Ga.App. 602, 275 S.E.2d 163 (1980), *aff'd sub nom. Emory Univ. v. Porubiansky,* 248 Ga. 391, 282 S.E.2d 903 (1981) (looking to various sources to declare contract void as against public policy); *see also Davis v. Kaiser Found. Health Plan of Ga., Inc.,* 271 Ga. 508, 510, 521 S.E.2d 815, 818 (1999) (allowing public policy to override validity of contract). Accordingly, in contrast to the at-will doctrine, Georgia jurisprudence stops short of holding that the freedom of contract can only be abrogated where a specific statutory exception has been created.

Because of the significant differences between contract law and the at-will employment doctrine, the court cannot conclude that *Reilly* controls. In the instant action, unlike *Reilly,* there is no specific statutory provision prohibiting recovery for failure to enter into a contract or for disability discrimination in public accommodations. The absence of such a specific prohibition means that no statute exists in the instant action to "control over the more general tort provisions of §§ 51–1–6 and 51–1–8." *Reilly,* 272 Ga. at 280–81, 528 S.E.2d at 240. Instead, Georgia decisions applying the general tort provision in section 51–1–6, and recognizing causes of action for violations of statutes without specific civil remedy provisions, govern this case. Accordingly, Amick may seek recovery based on section 51–1–6.[3]

## IV. *Summary*

Therefore, the court concludes that, based on the doctrine of negligence per se and section 51–1–6, Amick's proposed amended complaint states valid claims for damages in counts two through five. Thus, Amick's proposed amended complaint is not futile, and according to Fed.R.Civ.P. 15(a), leave to amend should be "freely given." Accordingly, Amick's motion for leave to amend his complaint [Doc. No. 9–1] is hereby GRANTED.

---

**3.** The court observes that its decision that Amick has stated a claim, under Georgia law, for recovery of damages for violations of sections 30–4–2 and 43–21–3 through the negligence per se doctrine and section 51–1–6 implies nothing about the underlying substantive merit of Amick's lawsuit. Amick must still present facts that demonstrate that the defendants violated sections 30–4–2 and 43–21–3, and Amick must still establish the other elements of a negligence claim by showing that violation of these provisions was the proximate cause of actual damage.