## A04A2037. COMANCHE CONSTRUCTION, INC. OF GEORGIA v. DEPARTMENT OF TRANSPORTATION et al.

(613 SE2d 158)

RUFFIN, Chief Judge.

Amanda Warnick sued Comanche Construction, Inc. of Georgia ("Comanche") and the Georgia Department of Transportation ("DOT") for damages she allegedly sustained in an automobile wreck along a construction zone detour route. Both defendants moved for summary judgment on Warnick's claims. Comanche also moved for summary judgment on DOT's cross-claim against it for contribution and indemnity. The trial court subsequently denied Comanche's motions for summary judgment. As to Warnick's claims against DOT, however, the trial court found DOT immune from suit and thus entitled to summary judgment.

Warnick did not file a notice of appeal relating to the trial court's grant of summary judgment to DOT. Comanche, however, appeals that ruling, asserting that it has standing to challenge the grant of summary judgment directly because the ruling adversely impacts its claim against DOT for contribution and indemnity. Pursuant to OCGA § 5-6-34 (d), Comanche also appeals the trial court's order denying its motions for summary judgment. For reasons that follow, we affirm.

"Summary judgment is appropriate when the evidence, construed most favorably to the nonmoving party, demonstrates that no genuine issues of material fact remain and the moving party is entitled to judgment as a matter of law."[1] Viewed in this manner, the record shows that, in December 1999, Comanche entered into a contract with DOT to refurbish 34 bridges in Georgia, including a bridge on Brownwood Road in Morgan County. The contract contained numerous specifications for the project, including specifications relating to traffic control. It also required Comanche to designate a "Work Site Traffic Supervisor" to be "responsible for initiating, installing and maintaining all traffic control devices."

Comanche designed and prepared a traffic control plan for the Brownwood Bridge repair, then submitted it to DOT for approval. The proposed plan detoured traffic onto Thankful Road, which ends at a T-intersection with Clack Road. The DOT approved the plan — which designated general locations for detour signs and other traffic signs — subject to the addition of two more detour signs.

Comanche's work site traffic control supervisor (the "WTCS") installed detour signs along the planned route on April 4, 2000. As

---

[1] (Punctuation omitted.) *MCG Health v. Nelson*, 270 Ga. App. 409, 410 (606 SE2d 576) (2004).

noted above, the traffic control plan provided general locations for the signs, but the WTCS used his judgment to determine, based on conditions, exactly where each sign should be placed. Pursuant to the plan, the WTCS installed a detour sign on Thankful Road, just before the intersection with Clack Road, which is regulated by a stop sign.[2] After Comanche installed the signs, a DOT technician inspected the detour route and informed the WTCS that the signs "were fine."

Comanche began the bridge repair on April 5, 2000, and finished the work on April 6, 2000. Later that day, Comanche reopened the bridge and removed the main construction signs placed along Brownwood Road. It did not, however, remove the detour signs, and the Morgan County Board of Commissioners complained to DOT on April 7, 2000, that detour signs remained along the detour route. DOT instructed Comanche to remove the detour signs, but Comanche did not take them down until April 10 or April 11, 2000.

On the night of April 8, 2000, Warnick was a passenger in a car driving along the Thankful Road detour route. The driver failed to stop at the intersection of Thankful Road and Clack Road, drove off the roadway, and collided with a tree. According to the driver, she did not realize that Thankful Road ended at the Clack Road intersection, and she did not see the stop sign because it was blocked by the detour sign at the intersection.

Warnick sued DOT and Comanche for damages she suffered in the wreck. She asserted that Comanche negligently placed the detour sign in front of the intersection stop sign. As to DOT, Warnick alleged that it "is liable because it was responsible for overseeing the project and it revised, assisted in designing, and approved the plans for the placement of the detour signs. It was also negligent in supervising and inspecting the installation of the detour signs."

DOT and Comanche both moved for summary judgment on Warnick's claims, and Comanche also requested summary judgment on DOT's cross-claim for contribution and indemnity. Finding DOT immune from suit under the Georgia Tort Claims Act,[3] the trial court granted DOT's motion for summary judgment. The trial court, however, denied Comanche's motions.

1. We must first address DOT's motion to dismiss this appeal. According to DOT, the trial court's order granting it summary judgment did not aggrieve Comanche, leaving the contractor without standing to appeal. We disagree. A defendant has "standing to appeal the grant of summary judgment to another co-defendant against

---

[2] Brownwood Road, Thankful Road, and Clack Road are all county roads that are not part of the state highway system.

[3] OCGA § 50-21-20 et seq.

whom he asserts a right of contribution."[4] We have applied this principle regardless of whether the appellant has actually filed a cross-claim for contribution.[5]

As clearly shown by the complaint, Warnick sued DOT and Comanche as joint tortfeasors. Georgia law creates a right of contribution among joint tortfeasors.[6] And Comanche asserts that the summary judgment award adversely impacted its contribution claim against DOT. Under these circumstances, Comanche has standing to appeal. Accordingly, DOT's motion to dismiss is denied, and we will address the merits of Comanche's arguments.

2. Sovereign immunity extends to the State, its agencies, and its departments unless specifically waived by an Act of the General Assembly.[7] Georgia's Tort Claims Act ("the Act") provides for a limited waiver of sovereign immunity, but also sets forth certain exceptions to that waiver.[8] As a department of the State, DOT is subject to the waiver and the exceptions in the Act.[9]

OCGA § 50-21-24 creates 13 exceptions to State tort liability. In granting DOT's motion for summary judgment, the trial court focused on the "inspection powers exception," which provides:

> [t]he [S]tate shall have no liability for losses resulting from ... [i]nspection powers or functions, including failure to make an inspection or making an inadequate or negligent inspection of any property other than property owned by the [S]tate to determine whether the property complies with or violates any law, regulation, code, or ordinance or contains a hazard to health or safety.[10]

The phrase "inspection powers or functions" includes both an inspection of physical property to determine whether it complies with accepted safety standards, as well as a review of construction plans for such compliance.[11] The exception applies to all "inspection powers and functions undertaken by state officials in the performance of their official duties or employment," regardless of the source for the

---

[4] *Merritt v. McCrary*, 162 Ga. App. 825, 827 (1) (292 SE2d 920) (1982).

[5] See *Porter v. Beloit Corp.*, 194 Ga. App. 591, 592 (1) (391 SE2d 430) (1990) (physical precedent only).

[6] See *City of Albany v. Pippin*, 269 Ga. App. 22, 23 (602 SE2d 911) (2004).

[7] See *Bruton v. Dept. of Human Resources*, 235 Ga. App. 291, 293 (509 SE2d 363) (1998).

[8] See id.

[9] See id.; *Dept. of Transp. v. Watts*, 260 Ga. App. 905, 905-906 (581 SE2d 410) (2003).

[10] OCGA § 50-21-24 (8).

[11] See *Magueur v. Dept. of Transp.*, 248 Ga. App. 575, 577 (547 SE2d 304) (2001).

alleged duty to inspect.[12]

The evidence shows that DOT employees reviewed and approved Comanche's traffic control plan, then inspected the detour route after Comanche installed the detour signs. In our view, such conduct falls squarely within the inspection powers exception in OCGA § 50-21-24 (8).[13]

We recognize that, in her amended complaint, Warnick alleged that DOT "assisted in designing" Comanche's traffic control plan. The record, however, belies this claim. Specifically, the Comanche project manager who prepared the traffic control plan testified that, other than obtaining approval from DOT, Comanche "handled all aspects" of designing the plan and installing the detour signs.

Furthermore, although DOT added two detour signs to Comanche's plan, neither of those signs is at issue in this case. And we cannot find that DOT took on design responsibilities — and removed itself from the inspection powers exception — simply by approving the plan on the condition that two signs be added.[14] Such result would eviscerate the exception to State liability for tortious acts in any case where the State discovers, through its inspection, some type violation or inadequacy that requires corrective action. Certainly, the legislature did not intend to limit the State's immunity to inspections involving no request for subsequent remedial work.[15]

On appeal, Comanche argues that DOT is statutorily precluded from delegating, through contract, its obligation to design traffic control plans and erect traffic control devices for DOT construction projects on public roads. According to Comanche, DOT had an ultimate, nondelegable duty to design the traffic control plan in this case and thus cannot hide behind the inspection exception. We find this argument unpersuasive.

In reviewing Comanche's claim, we are guided by two principles. First, "where the language of [a] statute is plain and unambiguous, and does not lead to contradictory, absurd, or wholly impracticable results, it is the sole evidence of legislative intent and must be construed according to its terms."[16] Second, this Court generally is

---

[12] Id. at 578.

[13] See id. at 577-578.

[14] See *Hubbard v. Dept. of Transp.*, 256 Ga. App. 342, 347 (2) (b) (568 SE2d 559) (2002) (contractor that is not responsible for design of construction project does not take on design responsibility simply by suggesting modifications to plans to bring them within contract specifications).

[15] See *Price v. State of Ga.*, 250 Ga. App. 872, 874-875 (1) (553 SE2d 194) (2001) (inspection powers exception applied to claim that State negligently inspected property and inaccurately informed property owner that it was unlawful to operate furnace on property).

[16] *Hall County Bd. of Tax Assessors v. Peachtree Doors*, 214 Ga. App. 613, 614 (448 SE2d 476) (1994), citing *Hollowell v. Jove*, 247 Ga. 678, 681 (279 SE2d 430) (1981).

unwilling to impose a nondelegable, affirmative duty upon a State entity absent clear statutory language that the legislature intended to establish such duty.[17]

As noted by Comanche, OCGA § 32-1-3 (24) (J) defines the term "public road" to include signs or traffic control devices on a detour route open to the public. And OCGA § 32-2-2 (a) (3) requires DOT to "provide for surveys, plans, maps, specifications, and other things necessary" for work on public roads that the DOT "may be given responsibility for or control of by law." But nothing in this statutory language prevents DOT from delegating responsibility for designing and implementing a traffic control plan to a private contractor.

Citing OCGA §§ 32-6-50 and 32-6-51, Comanche contends that only DOT, a county, or a municipality may erect and maintain traffic control signs. Once again, however, we see nothing in the statutory language that prohibits DOT from delegating such responsibility to a private contractor through a construction contract. In fact, OCGA § 32-6-50 (b) requires DOT to "place and maintain, *or cause to be placed and maintained,* such traffic-control devices upon the public roads of the state highway system as it shall deem necessary to regulate, warn, or guide traffic."[18] Although the Brownwood Bridge detour was not established on state highway system roads, OCGA § 32-6-50 certainly does not saddle DOT with ultimate responsibility for installing and maintaining traffic control devices on all county and municipal road systems.[19]

Comanche further argues that OCGA § 32-6-51 prohibits a non-governmental contractor from installing traffic control signs "on its own initiative." Comanche, however, did not act on its own initiative here. Instead, it designed and established the detour route pursuant to a contract with DOT and subject to DOT's approval and inspection. Moreover, Comanche has cited no authority prohibiting DOT from entering such contracts.[20]

---

[17] See *Dept. of Veterans Svcs. v. Robinson,* 244 Ga. App. 878, 880-881 (536 SE2d 617) (2000) (where statute at issue did not prohibit Department of Veterans Services from delegating its duty to care for veterans, delegation not improper).

[18] (Emphasis supplied.)

[19] See OCGA § 32-6-50 (c).

[20] See OCGA § 32-6-51 (a) ("It shall be unlawful for any person to erect, place, or maintain within the right of way of any public road any sign, signal, or other device except . . . as required or authorized by Code Section 32-6-50 *or any other law*.") (emphasis supplied); *Hardin v. Macon Mall,* 169 Ga. App. 793, 794 (1) (315 SE2d 4) (1984) (" 'Absent a limiting statute or controlling public policy, parties may contract with one another on whatever terms they wish and the written contract defines the full extent of their rights and duties.' ") (citations omitted). Cf. *Purvis v. Virgil Barber Contractor, Inc.,* 205 Ga. App. 13, 14-15 (1) (421 SE2d 303) (1992) (trial court properly instructed jury that private paving contractor had no duty to install traffic control signs because paving contract did not require that it erect the signs, OCGA § 32-6-51 prohibited contractor from placing signs on its own initiative, and county was responsible for

We similarly reject Comanche's argument that several federal regulations place responsibility for the traffic control plan on DOT. As with the cited Georgia statutes, nothing in these regulations necessarily renders DOT ultimately responsible — and thus liable — for design decisions relating to the traffic control plan. Indeed, 23 CFR § 630.1010 (a) (4) (2004) specifically allows a state highway agency to permit a contractor to develop and use its own traffic control plan in a roadway project. And although the highway agency must designate a person for the project who will have "the primary responsibility and sufficient authority for assuring that the [plan is] effectively administered,"[21] we see no reason why this requirement necessarily elevates DOT's involvement to something more than inspection and approval.

Finally, the cases Comanche cites to support its argument that DOT retained design control over the traffic plan — *Hubbard v. Dept. of Transp.*[22] and *Dept. of Transp. v. Cushway*[23] — are factually distinct and do nothing to dissuade us. In stark contrast to the evidence in this case, the record in *Hubbard* showed that DOT designed the traffic control plan at issue there, and the private contractors merely implemented the plan pursuant to DOT's designs, directives, plans, and specifications.[24] Moreover, the *Hubbard* decision addressed the private contractors' liability for negligence in implementing the plan.[25] It did not involve a claim for sovereign immunity under OCGA § 50-21-24 (8). Similarly, the *Cushway* decision considered whether DOT was entitled to summary judgment based on the plaintiff's failure to file an expert affidavit pursuant to OCGA § 9-11-9.1.[26] The Court did not address the inspection powers exception, and it does not appear that DOT sought summary judgment on this ground.[27]

The evidence here shows that DOT's actual involvement with the Brownwood Bridge detour was limited to approving traffic control design plans prepared by Comanche and inspecting the detour route.

---

necessary traffic control devices).

[21] 23 CFR § 630.1010 (b) (2004).

[22] Supra.

[23] 240 Ga. App. 464 (523 SE2d 340) (1999).

[24] See *Hubbard*, supra at 348-349 (2) (c).

[25] See id. at 349.

[26] See *Cushway*, supra at 464.

[27] See id. at 466, n. 4 (indicating that questions of fact remained as to whether DOT was entitled to sovereign immunity under OCGA § 50-21-24 (10), which exempts the State from liability for losses resulting from "[t]he plan or design for construction of or improvement to highways, roads, streets, bridges, or other public works where such plan or design is prepared in substantial compliance with generally accepted engineering or design standards").

As Comanche's own project manager testified, Comanche, not DOT, handled all other aspects of the plan. Accordingly, DOT is entitled to sovereign immunity under OCGA § 50-21-24 (8).[28]

3. Comanche argues that the trial court erred in denying its motion for summary judgment as to Warnick's claims. We find no error.

According to Comanche, our decision in *Hubbard v. Dept. of Transp.*[29] entitles it to summary judgment. As noted above, however, *Hubbard* is factually distinguishable and does not control here. In particular, DOT — rather than the private contractors — designed the roadway construction project at issue in *Hubbard*, as well as the traffic control plan.[30]

Noting that DOT approved the placement of the detour signs in this case, Comanche further claims that it simply "followed the instructions of the DOT regarding the [sign] installation" and cannot be held liable for any resulting negligence. Undoubtedly, DOT approved the detour route, including the detour sign placed at the Thankful Road/Clack Road intersection. And it is undisputed that DOT, as well as the contract, required Comanche to follow the Manual on Uniform Traffic Control Devices ("MUTCD") in preparing the traffic control plan. The evidence also shows, however, that, aside from DOT's inspection and approval process, Comanche handled all aspects of the plan's design and implementation. Moreover, the actual placement of each sign was left to the judgment of Comanche's WTCS. We cannot find, therefore, that Comanche simply placed the signs where instructed by DOT.[31]

Several witnesses, including Comanche's project manager, testified that under the MUTCD, a detour sign should not be installed such that it blocks a stop sign. And Warnick presented evidence that the placement of the detour sign at the Thankful Road/Clack Road intersection blocked the stop sign. The record also shows that the end of Thankful Road is difficult to discern, and, without a visible stop sign, drivers do not know to slow down for the intersection. Under these circumstances, questions of fact remain as to whether Comanche negligently placed the detour sign at the intersection. Accordingly, the trial court properly denied Comanche summary judgment on Warnick's claims.

---

[28] See *Magueur*, supra.
[29] Supra.
[30] Id. at 346-347, 348-349.
[31] Compare id. at 348-349.

4. Finally, Comanche contends that the trial court erred in denying its summary judgment motion with respect to DOT's cross-claim for contribution and indemnity. The cross-claim sought recovery from Comanche "[t]o the extent DOT is found liable to [Warnick]." As discussed in Division 2, DOT is immune from the allegations in Warnick's complaint. Accordingly, this enumeration of error is moot.

*Judgment affirmed. Bernes, J., concurs. Adams, J., concurs in the judgment only.*

DECIDED MARCH 25, 2005 —
RECONSIDERATION DENIED APRIL 13, 2005 — 

*Finley & Buckley, Timothy J. Buckley III, Dennis A. Brown*, for appellant.

*Thurbert E. Baker, Attorney General, Appelbaum & Associates, Eve A. Appelbaum, Todd C. Passman, Speckhals & Cora, Trent B. Speckhals, Hector R. Cora*, for appellees.